751 F.2d 209
 CITIZENS STATE BANK OF MARSHFIELD, MISSOURI and William G.
Magers, John W. Greer, Paul Beckerdite, Calvin Burchfield,
Wayne Jones, Wallace R. McFaddin, and C. Virgil Vernon, as
the Board of Directors of Citizens State Bank, Marshfield,
Missouri, Petitioners-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent-Appellee.
 No. 82-1776.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1984.
Decided Dec. 12, 1984.
 
 Donald W. Jones, Springfield, Mo., for petitioners-appellants.
 MaryBeth Triano, Washington, D.C., for respondent-appellee.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and HANSON,* Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The Federal Deposit Insurance Corporation Board (FDIC) has filed an amended decision finding numerous violations by the Citizens State Bank of Marshfield, Missouri, of the Truth in Lending Act, 15 U.S.C. Secs. 1601-1667 (1982), and of Regulation Z (12 C.F.R. Sec. 226.1 et seq. (1984)) thereunder. This decision supports the FDIC's order requiring that Citizens Bank cease and desist certain improper disclosure practices and search its records back to January 1, 1977, and reimburse consumers for overcharges said to arise from such violations. Citizens Bank attacks the order as not supported by substantial evidence when certain transactions are excluded from consideration and as arbitrary and unfair in the light of changes in truth-in-lending legislation. The Bank further asserts that the FDIC has no authority to require reimbursement. We uphold portions of the cease and desist order but vacate the remainder and reverse with respect to reimbursement.
 
 
 2
 This case arises from the FDIC practice of periodically examining banks for compliance with truth-in-lending and other consumer legislation. The Citizens Bank was subject to such examinations in October 1977 and again in January 1980. The charges here were filed pursuant to this latter examination and were supplemented, by order of the administrative law judge, by a more definite statement specifying the loans on which the FDIC intended to rely. Following a three-day hearing, the administrative law judge characterized the evidence as to Regulation Z violations "unconvincing" and recommended against sanctions.[1]
 
 
 3
 The FDIC, however, entered the order described above, which is now before us for the second time. On the first appeal we concluded that the FDIC had failed to sufficiently articulate the reasons and basis for its action, and we remanded with directions that it provide a full and particular statement of the facts and the reasons bearing on its decision. Citizens State Bank v. FDIC, 718 F.2d 1440 (8th Cir.1983).[2] The amended decision repeats the original findings, adding references to the record and exhibits to identify the specific transactions as to which violations were found.[3] These references show that the FDIC relied on loans not asserted for the given violations in the more definite statement and on loans which had been made before the 1977 compliance examination such that any violations should have turned up at that time. The amended decision also discusses in detail the findings of the administrative law judge and articulates the FDIC's reasons for either agreeing or differing. It concludes:
 
 
 4
 The restoration of the improperly excluded transactions to the sample provides a much wider spectrum of violations than that considered by the ALJ. When all these transactions are considered, the record is replete with unrebutted evidence of repeated violations. The violations justify the issuance of a cease-and-desist order. To the extent that a pattern or practice must be established as a prerequisite to ordering reimbursement, a clear and consistent pattern or practice has been established. It is evident from the record that the violations of the finance charge and annual percentage rate provisions were not isolated or accidental or peculiar departures from otherwise correct practices.
 
 
 5
 Citizens State Bank of Marshfield, Missouri, FDIC 80-51b, slip op. at 17 (Dec. 19, 1983). We think it evident that this amended decision complies with the mandate of our earlier opinion and sufficiently provides the reasons and basis for the FDIC's findings and conclusions so that we may now appropriately consider the arguments raised by Citizens Bank.
 
 
 6
 The Bank first asserts that, excluding two groups of transactions that could not properly be considered--those not listed in the more definite statement and those occurring prior to the 1977 compliance examination--the findings of the FDIC are not supported by substantial evidence. The Bank also argues that the subsequent simplification of the exceedingly technical truth-in-lending regulations it was charged with violating makes imposition of a cease and desist order improper. Finally, the Bank argues that the portion of the order requiring reimbursement is unlawful as beyond the FDIC's power under 12 U.S.C. Sec. 1818(b)(1) (1982), pursuant to which the agency purports to act.[4] The American Bankers Association filed an amicus brief making related arguments as to reimbursement.
 
 I.
 
 7
 As an initial matter, Citizens Bank alleges a lack of due process and violation of 5 U.S.C. Sec. 554(b)(3) (1982) (requiring notice of "the matters of fact and law asserted") insofar as the FDIC's conclusions are based on loans not set forth in the more definite statement ordered by the administrative law judge.
 
 
 8
 The law on this issue is clear: A respondent to an agency action is entitled to know the basis of the complaint against it but has been accorded due process if the record shows that it understood the issues and was afforded a full opportunity to meet the charges. NLRB v. MacKay Radio & Telegraph Co., 304 U.S. 333, 350, 58 S.Ct. 904, 912, 82 L.Ed. 1381 (1938). "Pleadings in administrative proceedings are not judged by the standards applied to an indictment at common law," Aloha Airlines v. Civil Aeronautics Board, 598 F.2d 250, 262 (D.C.Cir.1979), but are treated more like civil pleadings where the concern is with notice and a complaint may be deemed amended to conform to evidence introduced without objection. Kuhn v. Civil Aeronautics Board, 183 F.2d 839, 841-42 (D.C.Cir.1950); see Fed.R.Civ.P. 15(b). The Eighth Circuit has long adhered to this position. See Boyle's Famous Corned Beef Co. v. NLRB, 400 F.2d 154, 164, 165 (8th Cir.1968); Montgomery Ward & Co. v. NLRB, 385 F.2d 760, 763-64 (8th Cir.1967); American Boiler Manufacturers Association v. NLRB, 366 F.2d 815, 821 (8th Cir.1966).
 
 
 9
 Citizens Bank seems to rest its argument that the issues here were not fully and fairly litigated primarily on the alleged complexity of the proceeding with the multiple charges based on a variety of occurrences. It cites Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1074-75 (1st Cir.1981), however, which involved unfair labor practices. Here the FDIC's case is based largely on documentary evidence: There is nothing complex about looking at loan papers and determining whether a finance charge and annual percentage rate are shown and calculating the correctness of the amounts, or, for that matter, in verifying the existence or correctness of other required disclosures, thus determining whether there have been truth-in-lending violations. The Bank also quotes Soule Glass to the effect that a lack of full litigation may be found if the court assesses additional penalties which, had they been raised in the complaint, could have caused a party to proceed differently. That consideration again is not present here.
 
 
 10
 Similarly, we note the absence of other circumstances which have led courts to find a lack of due process in an insufficient complaint. Citizens Bank made no objection on grounds of relevance to the introduction of evidence concerning loans not listed in the more definite statement, see Montgomery Ward, 385 F.2d at 764; Citizens Bank does not allege factual error as to any of the individual violations relied on by the FDIC nor does it suggest what additional exculpatory evidence it could have introduced, see Aloha, 598 F.2d at 262; Citizens Bank does not list additional defenses which it might have asserted, see NLRB v. Blake Construction Co., 663 F.2d 272, 282 n. 31 (D.C.Cir.1981); and Citizens Bank actually did offer the defense of "commercial transaction not covered by the Truth in Lending Act" as to at least three loans which were not listed in the more definite statement. See Boyle, 400 F.2d at 164. Finally, as pointed out by the administrative law judge, data in the FDIC compliance report given to Citizens Bank revealed most of the violations on which the FDIC eventually relied. While this report included many additional transactions and did not match loans perfectly as to the violations alleged, perhaps making the Bank's defense more burdensome, we cannot believe that that possibility alone gives rise to a violation of due process in the absence of any of the specific indications of prejudice listed above.[5] Thus, we conclude that the FDIC did not err in considering loans not specifically enumerated in the more definite statement.
 
 
 11
 Second, Citizens Bank argues that a group of nine transactions which occurred before the 1977 compliance examination should be excluded. Its protest seems directed primarily at those loans where either the finance charge and/or the annual percentage rate was improperly disclosed and on the basis of which the FDIC seeks to order restitution. The administrative law judge recommended exclusion of those prior examination transactions as the "proper" course of action without presuming to determine if a broader exercise of agency powers could be legally sustained. The FDIC rejected this limitation and considered those loans, alleging primarily its legal authority to do so. Section 1818 of title 12 of the United States Code does not deal with the timing of violations for which the FDIC may initiate enforcement proceedings. Because the disputed transactions all occurred within just a few months before the 1977 compliance examination, we cannot conclude that the FDIC abused its enforcement discretion or arbitrarily pursued stale violations beyond any possible benefit to statutory intent and purpose. Thus we cannot sustain the Bank's objection to consideration of those transactions.
 
 
 12
 Having concluded that the FDIC did not err in relying on the two groups of challenged transactions, we now look to the existence of substantial evidence to support its findings. We must, as we discussed on first appeal, take into account the differing opinion of the administrative law judge. Citizens Bank, 718 F.2d at 1444. An agency departing from the findings of its trial examiner must show that it gave "attentive consideration" to those conclusions. Greater Boston Television Corp. v. FCC, 444 F.2d 841, 853 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). Such consideration may be found if the agency decision reflects an awareness of the examiner's findings and gives reasons for taking a different course and that choice is supported by substantial evidence. Id.
 
 
 13
 The FDIC's amended decision meets this description. The administrative law judge's finding of a lack of a pattern of violations was based first upon its exclusion of more than half of the transactions initially relied upon by the FDIC. The amended decision agrees with the exclusion of certain transactions as commercial and articulates in detail its reasons, based on interpretation of regulations or language, in instances where it includes loans the administrative law judge objected to for other reasons. The amended decision fails to give reasons only when including loans the administrative law judge excluded merely through failure to mention. We thus conclude that there is substantial evidence to support the findings enumerated by the FDIC in paragraphs one to nine of its decision.
 
 II.
 
 14
 We believe, however, that there are specific items of evidence which, while supported by the record, were improperly considered in designing the remedy, and this causes us to conclude that portions of the cease and desist order were improperly entered. The FDIC, for example, refused to exclude a loan made to Richard Huckaba for growing white rabbits for resale. The administrative law judge had deleted it from consideration because, as a result of the 1980 truth-in-lending amendments, agricultural transactions are now exempt, 15 U.S.C. Sec. 1603: "Why," he asked, "order a bank to cease doing something which is perfectly legal when the order is issued?" The same can be said of many of the other transactions used to support the FDIC's decision. Identification of balloon payments and itemization of components of the finance charge are no longer required;[6] a security interest is now sufficiently described if the property to which it attaches is identified by "item or type";[7] and "refinancing," such that new disclosures are required, occurs only when the old obligation is actually extinguished and a new one substituted and not when credit terms are merely altered.[8] The FDIC in its amended decision does say that the Huckaba loan is relevant only to the existence of a violation and not to any remedial action; but when the "violations" may no longer be violations, as in some categories here, there remains nothing on which to base even a cease and desist remedy.
 
 
 15
 The amended decision cites cases holding that cessation of violations is not a defense to a cease and desist order. E.g., Hecht Co. v. Bowles, 321 U.S. 321, 327, 64 S.Ct. 587, 590, 88 L.Ed. 754 (1944). That is not the situation before us, however.[9] The concern there is whether a party who promises to "sin no more" will keep that promise, and an administrative agency has discretion to enter the sanction if it believes it necessary to protect the public, given the likelihood that the improper practice truly has been abandoned. Zale Corp. v. FTC, 473 F.2d 1317, 1320 (5th Cir.1973). Citizens Bank, to the contrary, because of changes in truth-in-lending regulations, will no longer be committing certain of these violations even if it continues the exact same conduct. To enter a cease and desist order here suggests that Citizens Bank, faced with a less stringent standard of truth-in-lending disclosures that it already meets, will become even more lax in its consumer loan practices.
 
 
 16
 We find no evidence to support such a conclusion. In our opinion on first appeal we specifically referred to the following statement in the administrative law judge's decision:
 
 
 17
 Regulation Z is extremely complex. A misunderstanding of one requirement can often lead to numerous alleged violations. As shown in the analysis examples given above, a failure to have two separate signatures appear on the loan application, one on the application itself and another separate signature which declines or accepts credit life insurance[,] can lead to a charge of failing to obtain the signature, or failing to disclose the correct annual percentage rate and a failure to disclose the correct finance charge. The 13 transactions that I have considered have resulted in over 60 alleged violations, and for the most part, these appear to have resulted from miscalculation rather than any deliberate intent to mislead the borrower and did not result from any gross negligence.
 
 
 18
 718 F.2d at 1441. The FDIC in its amended decision does not comment on or take into consideration these concerns, which we think are most significant in light of this passage from the Senate report accompanying the 1980 truth-in-lending amendments:Creditors, on the other hand, have encountered increasing difficulty in keeping current with a steady stream of administrative interpretations and amendments, as well as highly technical judicial decisions. There is also evidence that many creditors have sincerely tried to comply with the act but, due to its increasing complexity and frequent changes, have nonetheless found themselves in violation and subject to litigation. In addition, this committee and other congressional and government sources have found the level of administrative enforcement by the Federal bank agencies seriously inadequate.
 
 
 19
 S.Rep. No. 368, 96th Cong., 1st Sess. 16, reprinted in 1980 U.S.Code Cong. & Ad.News 236, 252.
 
 
 20
 Cease and desist orders issued pursuant to 12 U.S.C. Sec. 1818 may be enforced through imposition of civil penalties of up to $1,000 for each day the violation continues. Common sense and fairness dictate that Citizens Bank not be exposed to such liability on the basis of practices, now lawful, which once constituted technical violations of legislation that Congress has amended expressly because of its concern with imposing penalties for disclosure errors such as many of those before us. Accordingly, we find the FDIC's cease and desist order arbitrary and capricious insofar as it addresses conduct which no longer violates truth-in-lending standards. Those portions of paragraphs 1, 2, 3(a) and 3(b) based upon such conduct are set aside as improperly entered. See 5 U.S.C. Sec. 706(2)(a) (1982).
 
 III.
 
 21
 The FDIC in its amended decision further finds that it did have the power under section 1818(b)(1) to order reimbursement for certain truth-in-lending violations. Section 1818(b)(1) authorizes issuance of a cease and desist order against any bank which is engaging in or about to engage in an "unsafe or unsound practice" or is violating or about to violate "a law, rule [or] regulation." Such an order may further require that the bank "take affirmative action to correct the conditions resulting from any such violation or practice."
 
 
 22
 Citizens Bank argues that, given the purpose and legislative history of section 1818, the FDIC's affirmative powers thereunder may be exercised only to protect the safety and soundness of banking institutions and not to correct consumer legislation violations. The principal case, however, on which Citizens Bank relies, Gulf Federal Savings & Loan Association v. Federal Home Loan Bank Board, 651 F.2d 259 (5th Cir.1981), cert. denied, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982), is not controlling. Reimbursement was denied in that instance because there was no underlying unsafe or unsound practice or violation of law on which the FDIC could base any kind of order.
 
 
 23
 Similarly, the FDIC makes too much of two decisions upholding reimbursement orders. In both First National Bank of Eden v. Department of the Treasury, 568 F.2d 610 (8th Cir.1978) (per curiam), and del Junco v. Conover, 682 F.2d 1338 (9th Cir.1982), cert. denied, 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983), the restitution ran from bank officials to their financial institutions and constituted repayment of funds the banks had lost--with a resulting threat to their safety and soundness--due to their officials' improper conduct. For example, in Eden the bank president and vice-president were ordered to return $61,000 in excessive bonuses. Because of their differing contexts, these cases provide little help in determining whether reimbursement is an acceptable affirmative remedy pursuant to section 1818 under the circumstances of this case.[10]
 
 
 24
 The FDIC in its amended order argues that reimbursement is sought to limit the Bank's return to the amount it disclosed or should have disclosed pursuant to Regulation Z and that the benefit to individual customers is incidental to the corrective action and therefore irrelevant. Thus, the FDIC argues, reimbursement for this purpose is "remedial." We believe this argument proves too much. While reimbursement may have a remedial function, so do other provisions of the cease and desist order. The scope of affirmative remedies available under section 1818 must be determined in the context of the statute which the regulatory agency seeks to enforce. Thus here we look to the purpose and structure of the Truth in Lending Act.
 
 
 25
 As an initial matter we reject the FDIC's argument that its power under section 1818 to order reimbursement is clear because Congress in its 1980 amendments to the Truth in Lending Act seemed to believe the FDIC had such power. Legislative history of subsequent acts is of dubious value in interpreting earlier statutes. United States v. United Mine Workers, 330 U.S. 258, 281-82, 67 S.Ct. 677, 690, 91 L.Ed. 884 (1947).[11] We also cannot agree that we must defer to the FDIC's discretion in choice of remedy. The scope of an agency's discretion is limited by its powers, and the power of the FDIC, which is what is at issue here, is a matter suitable for judicial resolution. Harmon v. Brucker, 355 U.S. 579, 582, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958) (per curiam). The deference accorded to administrative construction of legislation does not extend to allow an agency to finally decide the limits of its powers. Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946).
 
 
 26
 The major bar to a finding that Congress intended to authorize administrative enforcement of the Truth in Lending Act through restitution orders is the existence of 15 U.S.C. Sec. 1640 (1982), which grants a private right of action for truth-in-lending violations. Agency-ordered reimbursement serves no function beyond that served by the civil remedy, and to allow the FDIC such power absent the restrictions incorporated by the 1980 amendments would be to sanction administrative preemption of the statutory enforcement scheme designed by Congress.
 
 
 27
 The declaration of purpose keynoting the Truth in Lending Act speaks of enhancing competition among financial institutions. 15 U.S.C. Sec. 1601 (1982). Though there was concern with protecting consumers against unfair and inaccurate disclosures, the regulatory scheme also was designed to standardize the methods used by financial institutions to calculate credit costs so that consumers would be able to make meaningful comparisons of figures quoted to them and to shop intelligently for credit. Id.; see Mourning v. Family Publications Service, 411 U.S. 356, 363, 93 S.Ct. 1652, 1657, 36 L.Ed.2d 318 (1973); H.R.Rep. No. 1040, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Ad.News 1962, 1970, 1974, 1975, 1979. Honest creditors who sought to comply with disclosure requirements were as well to be protected from competition from unscrupulous lenders. H.R.Rep. No. 1040, supra, reprinted at 1975-76. In this context, where the injury may be the failure to obtain cheaper credit elsewhere, the amount of damages to the consumer and the unjust gain by the financial institution from its violation will be difficult to calculate; thus Congress provided in section 1640 for liquidated damages of twice the finance charge but no less than $100 nor more than $1,000. Binnick v. Avco Financial Services, 435 F.Supp. 359, 365 (D.Neb.1977); Porter v. Household Finance Corp., 385 F.Supp. 336, 342 (S.D.Ohio 1974). Similarly, a reimbursement of the amount by which a finance charge or annual percentage rate exceeded the figure disclosed may not reflect actual damages or unjust gain but may only serve as a convenient measure of liquidated damages contrary to the measure already selected by Congress.
 
 
 28
 Congress in section 1640 circumscribed the liability of financial institutions by establishing a one-year statute of limitations, 15 U.S.C. Sec. 1640(e), and made the civil remedy subject to both voluntary adjustment of the error and the isolated and inadvertent nature of the violation. Id. Sec. 1640(b), (c). Reimbursement under section 1818 would be free of all these restrictions so that a financial institution would not be able, as Congress intended, to avoid its liability in the given instances. Consumers who "sat on their rights" as to the express civil remedy years later could still recover a form of liquidated damages. Finally, allowing reimbursement under section 1818 would give rise to the prospect of double recovery for consumers who had not yet let their one-year civil remedy expire. It is not clear that they would not be able to collect their liquidated damages of the difference between the disclosed and actual finance charge or annual percentage rate and then sue for double the finance charge under section 1640. The Truth in Lending Act was not meant to be enforced so as to harass financial institutions or unjustly enrich consumers, Whitlock v. Midwest Acceptance Corp., 449 F.Supp. 631, 636 (E.D.Mo.1977), rev'd on other grounds, 575 F.2d 652 (1978), and we are convinced that that would be the result if, by allowing the FDIC to order reimbursement under section 1818, we were to allow consumers a recovery without proof of damages beyond that expressly provided in Section 1640.[12]
 
 
 29
 Even assuming, as the FDIC asserts, that reimbursement, despite the fact that the dollars recovered go to individual consumers, is a "public" rather than private remedy, it cannot function in that role, either, in the statutory scheme established by Congress. Restitution will not have the effect of disgorging unjust gains from violations because, as discussed above, damages are uncertain and do not necessarily follow the measure the FDIC is asserting. To the degree that public enforcement is aided by monetary assessments in addition to cease and desist orders, section 1640 was intended to fill that role, also:[13] Congress provided for attorney fees (15 U.S.C. Sec. 1640(a)(3)) as well as liquidated damages as incentives for individual civil suits so that widespread compliance could be obtained, without government involvement, through a system of "private attorneys general." Bizier v. Globe Financial Services, 654 F.2d 1, 2-3 (1st Cir.1981); see also Murphy v. Ford Motor Credit Co., 629 F.2d 556, 561 (8th Cir.1980), vacated mem. on other grounds, 452 U.S. 957, 101 S.Ct. 3103, 69 L.Ed.2d 967 (1981); Murphy v. Household Finance Corp., 560 F.2d 206, 210 (6th Cir.1977).
 
 
 30
 As a final observation we acknowledge the constitutional implications of agency-ordered reimbursement of individuals under section 1818; the interpretation sought by the FDIC at least raises questions of improper delegation of judicial functions to non-Article III administrative bodies. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We need not reach that issue here, however, because we dispose of this case on other grounds. U.S. Marshals Service v. Means, 741 F.2d 1053, 1060 (8th Cir.1984) (en banc).
 
 
 31
 We have carefully considered the other arguments raised by Citizens Bank and find them either meritless or irrelevant given our disposition of the above issues. Because we find that the FDIC acted arbitrarily and capriciously in ordering Citizens Bank to cease and desist conduct which no longer violates truth-in-lending regulations and because we find that it lacked the power under section 1818 to order reimbursement as a remedy in these circumstances, we vacate those portions of the FDIC's order.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa
 
 
 [1]
 The administrative law judge did find evidence to support certain non-Regulation Z violations also turned up as a result of the compliance examination. Those findings are not at issue here
 
 
 [2]
 We retained jurisdiction to consider any order issued pursuant to the remand. The parties were given the opportunity to file objections to the amended decision, and oral arguments were heard
 
 
 [3]
 The findings were as follows:
 
 
 [1]
 Respondent bank extended consumer credit other than open-end credit ("closed-end Credit") and did not disclose, as required by Section 226.8(d)(3) of Regulation Z, the finance charge as required to be determined by the provisions of Section 226.4(a) of Regulation Z (12 C.F.R. Secs. 226.8(d)(3), 226.4(a))
 
 
 [2]
 Respondent bank extended closed-end credit and did not disclose, as required by Section 226.8(b)(2) of Regulation Z, the annual percentage rate, as required to be determined by Section 226.5(b)(1) (12 C.F.R. Secs. 226.8(b)(2), 226.5(b)(1))
 
 
 [3]
 Respondent bank extended closed-end credit and failed to disclose the cost of credit insurance or failed to obtain a specifically dated and separately signed, affirmative, written indication from the customer that he or she desired optional credit insurance, or both, and it did not include the cost of credit insurance in the finance charge
 
 
 [4]
 Respondent bank extended close-end [sic] credit and required customers to purchase credit insurance in connection with the extension of credit and failed to include the cost of such insurance in the finance charge
 
 
 [5]
 Respondent bank refinanced existing extensions of closed-end credit within the meaning of Section 226.8(j) of Regulation Z without providing the disclosures required by Section 226.8 of Regulation Z (12 C.F.R. Sec. 226.8(j))
 
 
 [6]
 Respondent bank extended closed-end credit and failed to either itemize and disclose various types of fees or charges, as required by Section 226.8(d)(3) of Regulation Z, or to include them in the finance charge, as required by Section 226.4(b) of Regulation Z (12 C.F.R. Secs. 226.8(d)(3), 226.8(b))
 
 
 [7]
 Respondent bank extended close-end [sic] credit where the last payment was more than twice the amount of an otherwise regularly scheduled payment and did not identify the amount of the last payment as a Balloon Payment, as required by Section 226.8(b)(3) of Regulation Z (12 C.F.R. Sec. 226.8(b)(3))
 
 
 [8]
 Respondent bank extended close-end [sic] credit secured by an interest in property and did not clearly identify the property to which the security interest related, as required by Section 226.8(b)(5) of Regulation Z (12 C.F.R. Sec. 226.8(b)(5))[.]
 
 
 [9]
 Respondent bank extended closed-end credit in which Respondent bank took a security interest in real property used as the principal residence of the customer, but which credit was not extended to finance the acquisition of the resident. In extending this credit, Respondent bank did not give the customer notice of his or her right to rescind the transaction, as required by Section 226.9(b) of Regulation Z (12 C.F.R. Sec. 226.9(b))
 Citizens State Bank of Marshfield, Missouri, FDIC 80-51b, slip op. at 5-6 (Dec. 19, 1983) (references to the record and exhibits omitted).
 
 
 [4]
 The parties make numerous references to 15 U.S.C. Sec. 1607(e), which now provides for, and in some cases mandates, reimbursement as a remedy for certain truth-in-lending violations. This amendment (Truth in Lending Simplification and Reform Act, Pub.L. No. 96-221, tit. VI, 94 Stat. 132, 168 (1980)) was not effective until after the occurrence of the transactions at issue and even after the compliance examination giving rise to the charges; and while it is expressly retroactive to January 1, 1977, the FDIC disavows any reliance on this provision and urges that we not reach Citizens Bank's arguments challenging the constitutionality of such retroactivity. We believe the FDIC's reference in the cease and desist order (para. 1) to section 1607(e) can be considered both as a descriptive guide to the remedy imposed and also to some degree as a basis for agency authority. We believe the invocation of section 1607, in the face of this disavowal of reliance, demonstrates that the FDIC perceives some weakness in its position in regard to its authority under section 1818
 
 
 [5]
 Although we need not reach the counterargument actually asserted by the FDIC because we find a full and fair hearing on the facts, we emphatically reject its attempt to distinguish the cases we rely on here as involving violations not alleged in complaints rather than mere evidence omitted therefrom. The FDIC cannot seriously argue that it is adequate to just list regulation subsections violated without noting time, place and manner any more than it would be adequate for an indictment to charge "X robbed a bank" or a civil plaintiff to plead "Y was negligent." Whether material omitted from a complaint is characterized as "a violation" or merely "evidence" is irrelevant; the concern is whether the material is necessary for the opposing party to adequately prepare a defense so that the matter may be fully litigated
 
 
 [6]
 Compare 12 C.F.R. Sec. 226.18(g) (1984) with 12 C.F.R. Sec. 226.8(b)(3) (1981) (superseded) (balloon payments) and 12 C.F.R. Sec. 226.18(d) (1984) with 12 C.F.R. Sec. 226.8(d)(3) (1981) (superseded) (itemization)
 
 
 [7]
 Compare 12 C.F.R. Sec. 226.18(m) (1984) with 12 C.F.R. Sec. 226.8(b)(5) (1981) (superseded)
 
 
 [8]
 Compare 12 C.F.R. Sec. 226.20(a) (1984) with 12 C.F.R. Sec. 226.8(j) (1981) (superseded)
 
 
 [9]
 That is the situation, however, as to the loan to Raymond Barton, for which Citizens Bank was found to have failed to disclose the optional nature of credit life insurance. The Barton transaction occurred prior to the 1977 compliance examination, in response to which the Bank changed its loan form. Since no similar violations were found involving the new form, we find it an abuse of discretion for the FDIC to base any portion of its cease and desist order on this violation also, and we vacate such portions of the order
 
 
 [10]
 Our approach assumes that the FDIC has the power to order affirmative action following a violation, such as a truth-in-lending violation, which does not constitute an unsafe or unsound practice. There is as of yet no clear answer to this question. The issue of affirmative powers when the statutory violation does not involve unsafe or unsound practices has been reached only in Otero Savings & Loan Association v. Federal Home Loan Bank Board, 665 F.2d 279 (10th Cir.1981), and each member of the panel spoke separately on that issue. The case actually involved enforcement proceedings under 12 U.S.C. Sec. 1730(e)(1) (1982) rather than under section 1818, but both provisions were enacted as part of the same legislation (Financial Institutions Supervisory Act of 1966, Pub.L. No. 89-695, 80 Stat. 1028, 1038, 1046), and they are worded identically except for modifications necessary to their contexts of savings and loan institutions and banks respectively. The result in Otero was that portions of a cease and desist order issued to enforce 12 U.S.C. Sec. 1832(a) (1982) (amended by Pub.L. No. 96-221, Secs. 303, 306, 94 Stat. 146, 147 (1980), effective Dec. 31, 1980), a statute restricting the availability of certain types of checking accounts, were vacated as beyond the administrative agency's power
 
 
 [11]
 The case cited by the FDIC, Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980), is not to the contrary. While the Supreme Court there, in interpreting a 1936 statute, did cite the understanding of Congress in enacting amendments in 1971 and 1972, it expressly cautioned that such subsequent legislative views could not override the unmistakable intent of the enacting Congress and were of value primarily when initial intent was obscure. Id. See also Andrus v. Shell Oil Co., 446 U.S. 657, 666 n. 8, 100 S.Ct. 1932, 1938 n. 8, 64 L.Ed.2d 593 (1980) ("[A]rguments predicated upon subsequent congressional actions must be weighed with extreme care;" used in context of reaffirming intent of enacting Congress); cf. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980) (distinguishing instances where the congressional interpretation of the intent of a prior statute is passed in legislation rather than just reflected in legislative history to amendments). Furthermore, the agency in Seatrain had consistently interpreted the 1936 statute in the manner espoused by the subsequent Congress. It is interesting to observe here that the first agency guidelines providing for truth-in-lending restitution, adopted in January 1979, were suspended on September 7, 1979. See R. Clontz, Truth in Lending Manual p 7.04, at 7-24 (5th ed. 1982); cf. S.Rep. No. 368, 96th Cong., 1st Sess. 27, reprinted in 1980 U.S.Code Cong. & Ad.News 236, 262. No subsequent guidelines providing for restitution existed until after passage of the 1980 amendments expressly giving financial regulatory agencies that authority
 
 
 [12]
 We observe that Congress did add some of those features, such as time restrictions, when it did expressly give financial regulatory agencies the power to order reimbursement for truth-in-lending violations. See 15 U.S.C. Sec. 1607(e)
 
 
 [13]
 The public interest is further protected by criminal penalties for knowing or willful truth-in-lending violations. 15 U.S.C. Sec. 1611 (1982)