953 F.2d 639
 1992-1 Trade Cases P 69,855
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TIPCO, INCORPORATED, Petitioner,
v.
Clayton YEUTTER, Secretary, U.S. Department of Agriculture;
Department of Agriculture; Agricultural Marketing
Service, Respondents.
 No. 91-1435.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1991.
Decided Jan. 30, 1992.
 
 On Petition for Review of an Order of the United States Department of Agriculture. (89-528-D)
 Argued: M. Albert Figinski, Stuart Ross Berger, Weinberg & Green, Baltimore, Md., for petitioner; Leslie Karen Lagomarcino, Office of General Counsel, United States Department of Agriculture, Washington, D.C., for respondents.
 On Brief: Alexandra K. Thomas, Weinberg & Green, Baltimore, Md., for petitioner; James Michael Kelly, Associate General Counsel, Raymond W. Fullerton, Assistant General Counsel, Margaret M. Breinhold, Deputy Assistant General Counsel, Office of the General Counsel, United States Department of Agriculture, Washington, D.C., for respondents.
 
 
 1
 D.Md.
 
 
 2
 AFFIRMED.
 
 
 3
 Before WILKINSON and NIEMEYER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 Tipco, Inc., a wholesale supplier of produce in the Maryland Wholesale Produce Market, appeals from the Secretary of Agriculture's Decision and Order revoking Tipco's Perishable Agricultural Commodities Act ("PACA") license after a finding that Tipco made regular payments to William Crandall, an assistant vice president and employee of one of Tipco's key customers, Magruder's, Inc., in exchange for Magruder's continued business. Tipco argues on appeal that the Judicial Officer ("JO") erred in concluding that Tipco violated an implied duty under the PACA, 7 U.S.C. § 499b(4) (1988); that the JO erred in deciding the novel issue of implied duties through the adjudicatory process rather than through rulemaking; and that the JO abused his discretion in sanctioning Tipco with license revocation.
 
 I.
 
 5
 Tipco supplied Magruder's with vegetables through Crandall from 1981 to 1988. The business relationship between Tipco and Magruder's deepened in December, 1987, when Crandall negotiated an agreement with Tipco Manager Frank Spinale to rent Tipco's empty warehouse bays for storing produce purchased and distributed by Magruder's. Tipco then became Magruder's main supplier and began delivering large quantities of produce, including fruit. The parties operated under a pricing agreement whereby Magruder's paid Tipco $1.50 above the cost for every container of fruit. Tipco's fruit sales increased substantially as a result of its relationship with Magruder's, but Magruder's fell behind in payments. Crandall then approached Spinale and requested payment of a twenty-five cents per package "brokerage fee." Spinale complied and payments totalling $38,000 were made to Crandall between June and November, 1988.
 
 
 6
 In August and October, 1988, United States Department of Agriculture ("USDA") Investigator James Bright conducted an investigation of Tipco's competitor, Sid Goodman & Co. ("Goodman") and discovered that Goodman was paying a twenty-five cents per package fee to produce buyers from Magruder's and Fresh Value stores, including Crandall. This investigation led to information implicating Tipco and an investigation of Tipco revealed similar payment by Tipco to Crandall. Spinale characterized the payments as a "brokerage fee" during his conversations with Bright, but admitted that he knew Crandall was not a broker and that Crandall never submitted brokerage bills. Spinale also stated that he saw nothing wrong with making the payments because they came out of Tipco's dollar profit margin.
 
 
 7
 Several months after the conclusion of Bright's investigation, the USDA filed a formal complaint against Tipco charging a violation of § 2(4) of the PACA, 7 U.S.C. § 499b(4). At an administrative hearing, Stanford Steppa, Crandall's supervisor, testified that he had suspected that "something shady was going on," but nonetheless backed Crandall "100 percent" and insisted that he was unaware of the payments. Crandall was subpoenaed by Tipco but failed to appear. At the conclusion of the hearing, the Administrative Law Judge ("ALJ") concluded that no violation of the PACA was stated, finding that Magruder's became aware of the payments from Tipco to Crandall in August or September of 1988, but allowed the payments to continue. The ALJ determined that Steppa's testimony to the contrary was not credible.
 
 
 8
 The JO reversed the ALJ's decision on appeal and ordered revocation of Tipco's license, relying heavily upon the Secretary's earlier decision, In re Goodman & Co., 49 Agric.Dec. (Sept. 26, 1990), aff'd., Sid Goodman & Co. v. United States, No. 90-2209 (4th Cir. Oct. 1, 1991) (unpublished). The JO found that Tipco made payments to Crandall to induce him to purchase more produce, that Magruder's was unaware of the payments, that Crandall was not authorized to receive such payments, and that the payment constituted willful, flagrant and repeated conduct, thus, supporting license revocation. This appeal followed.
 
 II.
 
 9
 This Court must review the entire administrative record to determine whether the agency's final decision is supported by substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).
 
 
 10
 Tipco's conduct in making payments to Crandall was found to violate the first and third clauses of the PACA provision, 7 U.S.C. § 499(b)(4).[1] Specifically, the JO determined that the invoices given to Magruder by Tipco violated the first clause of the statute by reflecting prices higher than those charged to other customers and by failing to specify that twenty-five cents of the profit on each package was paid to Crandall. The JO also found that Tipco breached its duty of fair dealing by engaging in commercial bribery and by failing to report Crandall's requests for "brokerage" payments to Magruder's, which it had an affirmative obligation to do. In reaching these conclusions, the JO found that Steppa was unaware of the kickbacks to Crandall[2] and that Magruder's policy prohibited Crandall's receipt of gratuities.
 
 
 11
 We find that the JO's decision is supported by substantial evidence. Although that decision directly contradicted the findings of the ALJ, the possibility of reaching two different conclusions does not prevent the agency's findings from meeting the substantial evidence test. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1956); see also Universal Camera Corp., 340 U.S. at 496 (substantial evidence test applies even where the agency and the ALJ reach contradictory conclusions). In such a situation, however, the agency must provide reasons for its departure from the ALJ's findings. Citizens State Bank v. FDIC, 751 F.2d 209, 214 (8th Cir.1984). The reasons for departure in this case are apparent on the face of the JO's opinion and turn on the JO's differing interpretation of the evidence regarding Magruder's knowledge, or lack thereof, of the payments to Crandall. On this record, there is substantial evidence, including Steppa's own testimony, to support the JO's conclusion that Magruder's was unaware of the payments, thus supporting the conclusion that the payments violated the PACA.
 
 
 12
 The JO's decision is also consistent with our recent opinion in Sid Goodman & Co. v. United States, No. 90-2209 (4th Cir. Oct. 1, 1991) (unpublished), in which we affirmed the agency's determination on very similar facts that Goodman's twenty-five cents per package payments to Crandall and other produce buyers violated the PACA's implied duty to deal fairly with competitors. Id., slip. op. at 8. We further held that invoices which did not reflect the payments were "false statements" within the meaning of the PACA and that Goodman's conduct was sufficiently willful to support license revocation. Id., slip op. at 11, 12.
 
 
 13
 We find no reason to depart from Goodman on the facts of this case. Many of the same actors are involved and the conduct in question occurred in the same produce market. The courts must afford deferential treatment to an agency's construction of a statute which Congress entrusted to its administration, Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45 (1984). We affirm the JO's determination that Tipco's conduct violated the PACA.
 
 
 14
 We also affirm the JO's imposition of license revocation as a penalty. Willful, flagrant, or repeated conduct warrants license revocation. 7 U.S.C. § 499h(a). "Willfulness" is an "intentional misdeed" or an equivalent "gross neglect of known duty." Sid Goodman & Co., slip op. at 12 (quoting Hutto Stockyard, Inc. v. USDA, 903 F.2d 299, 304 (4th Cir.1990)). Violations which do not occur simultaneously must be considered "repeated." See Zwich v. Freeman, 373 F.2d 110, 115 (2d Cir.), cert. denied, 389 U.S. 835 (1967). In this case, the payments to Crandall were made regularly over a period of several months. The agency has wide latitude in selecting appropriate penalties, Butz v. Glover Livestock Comm'n. Co., 411 U.S. 182, 185-86 (1973), and we find that license revocation was not inappropriate.
 
 
 15
 Accordingly, we affirm the agency's decision finding a violation of PACA and revoking Tipco's license, as reflected in the opinion of the JO.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The pertinent clauses make it unlawful to: (i) make false or misleading statements for a fraudulent purpose in connection with a perishable agricultural commodity transaction, and (iii), "fail, without reasonable cause to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction." Id. at § 499(b)(4)
 
 
 [2]
 The JO noted that Steppa challenged Crandall's earlier conversion of television set and also cited Steppa's expression of shock when approached by USDA investigators about Goodman's kickbacks to Crandall