UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHNNY E. MILLER,
Petitioner,

v.

No. 95-3174

THERMALKEM, INCORPORATED;
SECRETARY OF LABOR,
Respondents.

On Petition for Review of an Order
of the National Labor Relations Board.
(94-SWD-1)

Submitted: July 31, 1996

Decided: August 15, 1996

Before HALL, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Johnny E. Miller, Petitioner Pro Se. Langley Richard Shook, Tamara
Renee Parker, Kathryn Ballow Thomson, SIDLEY & AUSTIN,
Washington, D.C.; Vonda Lynette Marshall, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Johnny E. Miller, a "dedicated line technician," was suspended from his employment with ThermalKEM, Inc. ("KEM") on December 28, 1993, and discharged on January 6, 1994, after he made internal complaints that reported violations of an environmental statute. KEM operated a hazardous waste storage and treatment facility which incinerated both solid and liquid hazardous wastes. At the time of Miller's termination, he was responsible for pumping liquid waste from storage drums into the facility's incinerator according to a feed plan. The feed plan provided for feeding certain types and amounts of waste at certain time intervals, based on the capacity of the incinerator and federal and state regulations. According to the feed plan, dedicated line technicians were required to prepare production logs-- feed reports--which showed the types, amount, and time intervals during which waste was pumped from the storage drums into the incinerator.

During the early morning hours of his work shift on December 28, 1993, Miller failed to follow the feed plan, which caused the incinerator temperature to rise above its normal operating temperature. The pollution control device malfunctioned, allowing the pump to continue feeding waste into the incinerator. The excess heat in the incinerator caused the thermal relief stack to vent the unburned materials into the atmosphere and damaged part of the incinerator. Furthermore, Miller falsified production logs to show that the waste was fed into the incinerator in compliance with the feed plan. Miller's immediate supervisor, Donald Koon, conducted an investigation of the incident and found that Miller did not follow the feed plan. Koon suspended Miller from work on the evening of December 28 pending further investigations.

On January 3, 1994, Miller met with William Scull, the process control manager, and told management that he fell behind on the feed plan on December 27 and Koon instructed him to make up the missed feed. Miller also informed management that Koon must have known about the making up of feeds as he was aware of mechanical breakdowns and production logs. Miller stated that it was common practice

2

for employees to make up missed feeds in violation of the feed plan. Scull agreed to investigate the allegations. On January 6, Scull told Miller that his investigation did not confirm Miller's allegations and Scull fired Miller.

Miller filed a complaint with the Department of Labor under the whistle blower provisions of the Solid Waste Disposal Act, 42 U.S.C. § 6971 (1988) ("SWDA"), claiming that he had been terminated in retaliation for informing management that employees were routinely instructed to make up missed feeds and to falsify feed reports in order to feign compliance with feed plan requirements. Miller also alleged that he was terminated because he might have been called to testify at proceedings resulting from KEM's violation of the SWDA. The Department of Labor informed Miller that its investigation revealed no evidence supporting his claim. Miller appealed this finding to an ALJ.

The ALJ found that Miller had engaged in protected activity when he reported violations of an environmental statute to management. The ALJ also found that KEM knew that Miller engaged in protected activity. However, the ALJ concluded that there was no evidence showing that Miller was about to testify in any state or federal environmental proceedings because Miller stated he had no intention of contacting a federal or state agency. The ALJ further concluded that Miller had established a prima facie case that his protected activity was a motivating factor for his termination. However, the ALJ found that KEM successfully rebutted the presumption that Miller received disparate treatment, by producing evidence establishing that Miller was terminated for a legitimate, nondiscriminatory reason. The ALJ held that Miller failed to demonstrate that KEM's reasons for terminating him were pretextual.

The Secretary adopted the ALJ's factual findings and concluded that KEM did not violate the employee protection provisions of the SWDA when it terminated Miller. Contrary to the ALJ's decision, however, the Secretary found that KEM was unaware of Miller's protected activity before it reached its decision to terminate his employment. Furthermore, the Secretary concluded that even if Miller's alleged protected activity contributed to his termination decision, KEM met its burden of proving that it would have taken the same

3

action even if he had not engaged in the protected activity. Accordingly, the Secretary affirmed the ALJ's dismissal of Miller's complaint. We find that substantial evidence supports the Secretary's findings that KEM was unaware of Miller's protected activity when it made its decision to discharge Miller, and Kem had a legitimate, nondiscriminatory reason for discharging Miller.

The Solid Waste Disposal Act provides in pertinent part:

> No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter or under any applicable implementation plan, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter or of any applicable implementation plan.

42 U.S.C. § 6971(a).

Generally, a plaintiff must establish a prima facie case of retaliatory discharge by establishing that: (1) he engaged in protected activity; (2) the employer had actual or constructive knowledge of the protected conduct; (3) the alleged discrimination occurred; and (4) a causal connection existed making it likely that the protected activity resulted in the alleged discrimination. See Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) (retaliatory discharge under Title VII); Simon v. Simmons Foods, Inc., 49 F.3d 386, 389 (8th Cir. 1995) (citing various Acts with various whisteblower provisions). Where there is evidence that reasons other than retaliation may also have accounted for the employee's discharge, the employer has the burden of proving, by a preponderance of the evidence, that it would have terminated the employee even if the employee had not engaged in the protected activity. See Ross, 759 F.2d at 365; Simon, 49 F.3d at 389.

This court's review of the Secretary's order is controlled by the Administrative Procedure Act, under which an agency decision will

4

be set aside if it is unsupported by substantial evidence, or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A)-(E) (1988); Duke Power Co. v. United States Nuclear Regulatory Comm'n, 770 F.2d 386, 389 (4th Cir. 1985). In reviewing the Secretary's decision, this court must consider the entire record, including the ALJ's recommendation and any evidence that is contrary to the agency's determination. Kellough v. Heckler, 785 F.2d 1147, 1150-51 (4th Cir. 1986). Great deference is accorded to an agency's expertise and discretion when the agency adopts the ALJ's findings. Duke Power, 770 F.2d at 389-90. However, an agency departing from the ALJ's findings must show that it gave attentive consideration to the ALJ's conclusions. King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980); Citizens State Bank of Marshfield, Mo. v. FDIC, 751 F.2d 209, 214 (8th Cir. 1984). Thus, the agency decision must reflect an awareness of the ALJ's findings and give reasons for reaching a different conclusion with respect to those findings. Id.

The ALJ found that Miller engaged in protected activity when he made internal complaints which reported violations of an environmental statute. The ALJ also found that KEM knew that Miller engaged in protected activity based on the serious nature of Miller's allegations. The ALJ concluded that in view of Miller's protected activity and his discharge shortly thereafter, Miller established a prima facie case that his protected activity was a motivating factor in his discharge. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). However, the ALJ found that KEM also had a legitimate, nondiscriminatory reason for discharging Miller because Miller had previously violated company rules. Miller violated company rules on December 15 by sleeping on the job. His offense was written up as taking excessive breaks. He was suspended without pay from December 19 through December 21 and informed that another violation of any safety policy could result in his discharge. Furthermore, after the December 28 incident, Miller admitted that he falsified feed reports in violation of company policy. Lastly, the ALJ concluded that KEM supervisors did not authorize or condone making up missed feeds or the falsification of records.

While ultimately agreeing with the ALJ that KEM had a legitimate reason for discharging Miller because of his previous violations of

5

company rules, the Secretary found that KEM decided to fire Miller before it was aware of any protected activity, and only delayed carrying out the decision to discharge Miller because he had raised allegations of widespread wrongdoing by other employees. The Secretary found that Miller's alleged protected activity occurred on January 3, when he told Scull that making up missed feeds was a common practice at KEM, but that the decision to fire Miller had already been made.

Substantial evidence supports the Secretary's finding that KEM was unaware of any protected activity when it made its decision to discharge Miller. Duke Power Co., 770 F.2d at 389. Koon investigated the cause of the overheating of the incinerator on December 28. He concluded that Miller had not followed the feed plan and Koon filled out a Corrective Action Form on the same day to that effect. Koon also suspended Miller on the same day pending further investigation. Before Scull met with Miller on January 3, Koon strongly recommended to Scull that Miller be fired. Koon told Scull that he met with Miller only two weeks earlier to stress the importance of complying with the feed plan and noted that Miller had recently been suspended for three days for taking excessive breaks. Koon also told Scull that Miller had been informed that his next violation of company rules would result in his termination. Also, Scull modified the description of Miller's infraction on the Corrective Action Form to state that Miller had fed more waste than was authorized by the feed plan for a period of two hours; Miller admitted that he was trying to catch up on earlier missed feeds against company policy and procedure; and Miller documented feed reports falsely to show that he had complied with the feed plan. All of these events occurred before Miller arguably engaged in any protected activity on January 3 by reporting to Scull that employees frequently failed to comply with feed plans. Scull delayed carrying out the decision to discharge Miller on January 3 because he wanted the opportunity to investigate Miller's allegations of company-wide wrongdoing.

Lastly, the Secretary correctly agreed with the ALJ's conclusion that even if Miller's alleged protected activity was a motivating factor in his discharge, KEM had dual motives for the discharge. KEM showed that Miller had violated company rules by previously sleeping on the job and failing to comply with the feed plan. Thus, KEM estab-

6

lished that it would have taken the same action even if Miller never engaged in protected activity. See Ross, 759 F.2d at 365; Simon, 49 F.3d at 389. Accordingly, we affirm the Secretary's dismissal of Miller's complaint. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7