Thaddeus S. MURPHY, Appellee,

v.

FORD MOTOR CREDIT CO. and Hilltop Lincoln Mercury, Inc., Appellants.

Thaddeus S. MURPHY, Cross–Appellant,

v.

FORD MOTOR CREDIT CO. and Hilltop Lincoln Mercury, Inc., Cross–Appellees.

Nos. 79–1822, 79–2061.

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1980.

Decided Aug. 28, 1980.

Lawrence W. Treece, Denver, Colo., for Ford Motor Co. & Hilltop.

Kenneth M. Chackes, Chackes & Hoare, St. Louis, Mo., for T. S. Murphy.

John R. Essner, Legal Services of Eastern Missouri, St. Louis, Mo., argued, Gayle C. Williams, Richard B. Teitelman, and Rodney H. Powell, St. Louis, Mo., on brief, for amicus curiae, Cynthia Sims.

John C. Shepherd, John S. Sandberg and Steven P. Sanders, St. Louis, Mo., for appellants, Ford Motor Co., et al.

Before HENLEY and McMILLIAN, Circuit Judges, and ROY,* Judge.

ROY, District Judge.

This appeal is brought by Ford Motor Credit Corporation ("Ford") and Hilltop Lincoln Mercury ("Hilltop") from a decision in the District Court[1] in favor of the plaintiff, Thaddeus Murphy ("Murphy"), on an allegation of a violation of the Consumer Credit Protection Act. This Act is known as the "Truth In Lending Act" (TILA), and is found at 15 U.S.C. §§ 1601, et seq. TILA has been translated into regulations by the Federal Reserve Board, those regulations being in the form of "Regulation Z", found at 12 C.F.R. §§ 226.1, et seq. Those portions of TILA and Regulation Z which are at issue herein are 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.-8(a)(1), (b)(5) which relate to the disclosure of security interests created in favor of lenders.

Jurisdiction in District Court was predicated on 15 U.S.C. § 1640(e) and in this Court is based on 28 U.S.C. §§ 1291 and 1294.

In the trial court, Murphy alleged that appellants failed to disclose the identity of Ford as a creditor, failed to identify all of the property to which the security interests related, failed to disclose the right to accelerate on default, failed to put all required disclosures on the same side of the page, failed to put the required disclosures in meaningful sequence, and failed to provide Murphy and his co–signer with a written disclosure statement. Murphy prevailed only on the allegation that the security interest created in favor of Ford by the assignment of any returned or unearned insurance premiums was not disclosed as such security interests are required to be by the Act. Appellants brought this appeal,

---

* The Honorable Elsijane T. Roy, Judge, United States District Court for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable Roy W. Harper, Judge, Eastern District of Missouri, Eastern Division.

alleging that the assignment of the premiums did not amount to a security interest and that the District Court erred in that determination. Murphy filed a cross–appeal based on the amount of attorney's fees which was awarded, claiming that $500.00 was insufficient.

The section of the installment sales agreement which is the subject of this appeal stated, on the back of the instrument:

> The Property shall be at Buyer's risk. Buyer shall obtain and maintain at his own expense for so long as any amount remains unpaid hereunder insurance protecting the interest of Buyer and Seller against loss, damage or destruction of or to the Property in such forms and amounts as Seller may require  .   .  ..
> Buyer hereby assigns to Seller any monies payable under such insurance, by whomever obtained, including returned or unearned premiums, and Seller is hereby authorized on behalf of both Buyer and Seller to receive or collect same, to endorse checks or drafts in payment thereof, to cancel such insurance or to release or settle any claim with respect thereto. The proceeds from such insurance shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of the Seller.

The District Court, relying on *Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979), held that the assignment of insurance premiums was a security interest as contemplated by 15 U.S.C. § 1638(a)(10) and that appellants' failure to disclose it as such constituted a violation of TILA.

The facts indicate that in March of 1978 Murphy purchased from Hilltop a 1977 Lincoln automobile. Murphy paid $1,300.00 as a down payment and financed the remainder. Murphy signed a retail installment loan contract for the amount remaining, and it was understood that the actual financing would be arranged through Ford.

Appellee filed this action against the appellants and at the close of the trial, the court found that the Act had been violated by both appellants and imposed the maximum statutory damages of $1,000.00 and awarded Murphy $500.00 for attorney's fees.

The issues presented by this appeal are, first, whether the District Court erred in its conclusion that the assignment of returned or unearned insurance premiums was a security interest which was required to be disclosed as such on the face of the contract or on the disclosure statement; and, second, whether the District Court abused its discretion in the award of attorney's fees of only $500.00 in light of the attorney's testimony that he spent 49.7 hours in preparation for and participation in the trial.

At the outset we note that three other circuit courts have determined that the assignment of unearned or returned insurance premiums in a retail installment contract does amount to a security interest and should be disclosed as such. *Valencia & Gonzalez v. Anderson Bros. Ford, et al,* 617 F.2d 1278 (7th Cir. 1980); *Edmondson v. Allen–Russell Ford, Inc., supra; Elzea v. National Bank of Georgia,* 570 F.2d 1248 (5th Cir. 1978); *Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437 (3d Cir. 1977). However, the Tenth Circuit, to some extent, has held to the contrary. *James v. Ford Motor Credit Co.* (10th Cir. June 24, 1980), and *Hernandez v. O'Neal Motors, Inc.* (10th Cir. June 24, 1980).

15 U.S.C. § 1638(a)(10) requires that the retention or acquisition of any security interest by a creditor in a consumer transaction be disclosed. However, "security interest" is not defined in TILA; rather, Congress left that detail to the Federal Reserve Board which was charged with promulgating the regulations required for the implementation of the Act. In response, the Board formulated Regulation Z. "Security interest" is defined therein at 12 C.F.R. § 226.2(gg) as follows:  .

> .  .   . any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under

the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

■ The appellants admit, in their brief, that the purpose of the assignment clause, or one of the purposes, is to use those returned or unearned premiums to apply to the debt of the debtor for the car. Appellants argue that the amount of such premiums would not be enough to offset any substantial portion of the debt owed on a car. Nevertheless, the definition given in the pertinent clause of Regulation Z does create an interest on the part of the creditor which secures payment or performance of an obligation. Therefore, the arguments of the appellants must fail under the clear definition of security interests.

As stated in *Valencia & Gonzalez, supra,* 617 F.2d at p. 1285:

Application of the Regulation Z definition of "security interest" in this case, as in *Edmondson,* poses no special problems. It is not seriously disputed that the assignment of unearned insurance premiums confers on the creditor an interest in property. Even the defendants refer to the assignment as an "incidental interest in property." Brief of Appellants at 8. Whether incidental or not, we agree with the Fifth Circuit that such an assignment is an interest in property. 577 F.2d at 294. Similarly, we agree that this property interest secures the performance or payment of an obligation. The assigned premiums may be used, in the sole discretion of the creditor, to purchase replacement insurance coverage or to pay part of the debtor's indebtedness. *In either case, the assignment secures an obligation of the debtor. Id.* at 294. The Creditor has the authority to cancel the insurance and

cause payment of the unearned premiums to itself at any time. The contract clearly gives the creditor an interest in property which secures performance of a debtor's obligation. Such an interest is by definition a security interest for TILA purposes. 12 C.F.R. § 226.2(gg), and as such must be disclosed. Defendants do not suggest that such disclosure was made in the contract before us. (emphasis supplied)

Herein, the appellants concede that the assignment creates an "interest" in favor of the lender, albeit "incidental." The purpose of the assignment is to secure the payment or performance of the debtor's obligation, however small the amount of the unearned or returned premiums might be. The application of the proceeds of the insurance, whether in the form of an indemnity or returned or unearned premiums, places the assignment squarely within the definition of a security interest under Regulation Z. Undeniably, the premiums would go to secure "payment or performance of an obligation," *i. e.,* the payment of the principal and interest of the amount of the loan to the debtor.

While we recognize that state law may be a factor in determining whether a security interest has been created in a given situation, an interest may, nevertheless, be a security interest for purposes of TILA even though it is not an enforceable security interest under state commercial law. *Valencia & Gonzalez, supra; Bulger v. Thorp Credit, Inc. of Illinois,* 609 F.2d 1255 (7th Cir. 1979). Appellants argue that the assignment does not amount to a traditional security interest. However, the Federal Reserve Board's definition of a security interest is considerably broader than the concept of security interests in the Uniform Commercial Code.

■ The provisions of TILA and Regulation Z, as remedial legislation, are to be broadly construed in favor of the consumer in order to implement Congressional intent and purpose. *Griffith v. Superior Ford,* 577 F.2d 455, 457 (8th Cir. 1978); *Sellers v. Wollman,* 510 F.2d 119, 122 (5th Cir. 1975). The adoption of the Act in 1968 was

premised on a Congressional finding that economic stabilization and competition in the credit industry would be promoted by the informed use of credit. 15 U.S.C. § 1601. The Congressional intent was to regulate disclosure in an industry which had previously been an example of the doctrine of *caveat emptor.* "Congress has determined that such purchasers are in need of protection." *Mourning v. Family Publication Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

In support of their position, appellants have directed this Court's attention to the new Truth in Lending Simplification and Reform Act of March 31, 1980. The legislative history to this Act states:

> The security interest disclosure is also simplified to eliminate the technical disclosure of the type of security interest taken. When a security interest is being taken in property purchased as part of the credit transaction, this section requires a statement that a security interest has been or will be taken in the property purchased. When a security interest is being taken in property not purchased as part of the credit transaction, the Committee intends this provision to require a listing by item or type of the property securing the transaction, but not a listing of related or incidental property. For example, a loan secured by an automobile (not being purchased with the proceeds of the loan) would require a statement indicating that the loan is secured by an automobile but would not require a listing in incidental or related rights which the creditor may have such as insurance proceeds or unearned insurance premiums, rights arising under or waived in accord with state law, accessions, accessories, or proceeds. Senate Committee Report, CCH Extra Edition No. 810, ¶ 2096 at 237.

However, this new Act does not take effect for two years from the date of its enactment (§ 625 of the Act), and the present action arises out of, and is controlled by, the existing Act.

We find the decisions of the Third, Fifth and Seventh Circuits to be logical and reasonable interpretations of the Act. In light of the reasoning of those decisions and the definition of "security interest" by the Federal Reserve Board, we feel compelled to resolve the issue herein in favor of the appellee.

■ Appellants have argued in the alternative that, if this Court affirms the District Court, the effect of the decision should be prospective, not retroactive, except as to the plaintiff.

The criteria for determining whether a decision should be given nonretroactive effect are contained in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971):

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, [whether] by overruling clear past precedent on which litigants may have relied, see *e. g., Hanover Shoe v. United Shoe Machinery Corp., supra* [392 U.S.,] at 496, [88 S.Ct., at 2233], 20 L.Ed.2d 1231, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e. g., Allen v. State Board of Elections, supra,* [393 U.S.,] at 572, 89 S.Ct., at 835, 22 L.Ed.2d 1. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra,* 381 U.S., at 629, 85 S.Ct. at 1738, 14 L.Ed.2d 601. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, supra,* 395 U.S., at 706, 89 S.Ct. at 1900, 23 L.Ed.2d 647.

See, also, *Simpson v. Union Oil Co.,* 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969); *Schae-*

*fer v. First National Bank of Lincolnwood,* 509 F.2d 1287 (7th Cir. 1975); *Shea v. City of St. Paul,* 601 F.2d 345, 350–51 (8th Cir. 1979); and *Rudolph v. Wagner Electric Corp.,* 586 F.2d 90 (8th Cir. 1978).

We have reviewed the facts at bar in light of all of the *Chevron* principles. In particular, we note that appellants have not persuaded us that retroactive application of our ruling will impede the operation of TILA or cause undue hardship or produce inequitable results. Thus, on balance we decline at this time to limit any retroactive effect our decision may have.

In his cross–appeal, Murphy has alleged that the trial court erred in awarding only $500.00 as attorney's fees in light of the evidence offered by the attorney that he spent 49.7 hours in preparation for and in the trial of the case. Murphy contends that the award should be for $3,727.50,[2] particularly since recovery was for $1,000.00, the maximum amount which can be awarded for a single violation.

Some of the guidelines for establishing a reasonable attorney's fee award are delineated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), and *Brown v. Bathke,* 588 F.2d 634 (8th Cir. 1978). The test to be applied on appeal in reviewing the attorney's fee award is whether the trial court abused its discretion in setting the amount of the fee. *Weeks v. Southern Bell T. & T. Co.,* 467 F.2d 95 (5th Cir. 1972), *reh. denied* 471 F.2d 650 (1973).

We recognize that the trial court considered may of the factors relative to the attorney's fee award in this action, but his memorandum opinion does not address the issue of whether the award was adequate to encourage enforcement of the Truth In Lending Act. The record here shows that plaintiff's attorney filed a complaint, conducted discovery by both deposition and interrogatory, then obtained leave to amend the complaint over the defendants' opposition, filed an amended complaint, submitted proposed findings of fact and conclusions of law, tried the case, and filed both trial and post–trial briefs.

Congressional goals expressed in the provisions of the Truth In Lending Act include the creation of a system of private attorneys general to aid in effective enforcement of the Act. *Sosa v. Fite,* 498 F.2d 114, 121 (5th Cir. 1974); *Postow v. OBA Federal Savings & Loan Association,* 627 F.2d 1370 (D.C.Cir. slip opinion June 18, 1980).

Accordingly, we deem it appropriate to remand the issue of the reasonableness of the attorney's fee award to the District Court for reconsideration as to whether the award is adequate to encourage meritorious enforcement actions under the provisions of the Act.

On this appeal, Murphy shall be awarded an attorney's fee of $600.00 and also his appeal costs.

Affirmed in part and remanded in part for reconsideration of attorney's fees as indicated.

HENLEY, Circuit Judge, dissenting in part.

I find no abuse of discretion in the trial court's award of attorney's fee, and I dissent from so much of the opinion of the court as calls for remand for reconsideration of that award.

---

2. This is based on a charge of $75.00 per hour.