Richard DOUGHERTY and Patrick Dougherty, Plaintiffs,

v.

HOOLIHAN, NEILS, AND BOLAND, LTD., Defendant.

Civ. No. 4–80–420.

United States District Court, D. Minnesota, Fourth Division.

Feb. 5, 1982.

Kurt M. Anderson, Willmar, Minn., for plaintiffs.

Vicki E. Conboy, St. Cloud, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

DIANA E. MURPHY, District Judge.

Plaintiffs Richard and Patrick Dougherty bring this action against defendant Hoolihan, Neils, and Boland, Ltd., pursuant to the Truth in Lending Act [the Act], 15 U.S.C. § 1601 *et seq.*, seeking rescission of a security interest in plaintiffs' homestead, statutory damages, and attorneys fees and costs for defendant's alleged violation of the Act and Federal Reserve Board Regulation z, 15 C.F.R. Part 226. Jurisdiction is alleged pursuant to 15 U.S.C. § 1640(e).

The matter was submitted by the parties on a stipulation of facts and issues, followed by their memoranda. Based upon the stipulation of facts, the submissions of the parties, and all the files, records, and proceedings herein, the court now makes the findings of facts and conclusions of law in memorandum form.

*Facts*

The parties' stipulation of facts may be summarized as follows. At the time this action was commenced, plaintiffs resided in Meeker County, Minnesota. Plaintiff Rich-

ard Dougherty still lives in Meeker County, but plaintiff Patrick Dougherty died in 1981. Defendant is a professional corporation, practicing law in the State of Minnesota.[1] For purposes of this action, defendant does not contest that it is involved in interstate commerce, and that it regularly extends credit payable by agreement in four or more installments or for which the payment of a finance charge is or may be required in connection with sales of service.

In October of 1978, plaintiffs requested defendant to determine whether the North American State Bank of Belgrade had misapplied funds in connection with an auction sale of personal property from plaintiffs' farm. The auction had been held to foreclose on security held by the Farmers Home Administration, St. Cloud National Bank, North American State Bank, and the Thorp Loan Company. Defendant insisted on a retainer and fees to be charged on an hourly basis. Total billings were $957.08, of which plaintiffs paid $218.00. Defendant determined there had been no misapplication of funds.

In December of 1978, plaintiffs were sued for allegedly acquiring 50 pigs by use of a check drawn on a bank in which they had not had an account for over a year. Defendant agreed to handle the matter at its usual trial and hourly rates. Defendant investigated and attended a pretrial and half day trial. It appears that the charges for this matter were included in the charges for investigating the auction.

In August of 1979, plaintiffs spoke to one of defendant's attorneys, Roger Neils, about representing plaintiff Patrick Dougherty in connection with a charge of felony theft of pigs. Neils told Patrick Dougherty defendant would not represent him in the criminal matter without being paid for the pre-existing debt for past services, amounting to $739.08. It was then agreed that in consideration for defendant's services in the criminal matter, plaintiffs would execute their personal promissory note and secure it with a mortgage on their 45 acre farm in Meeker County in Minnesota. The mortgage note was signed by plaintiffs after Patrick Dougherty's first appearance in the criminal matter. Defendant performed some services after the note was signed, but withdrew from the case at plaintiffs' request. It billed $286.00 for services in the criminal case and $19.97 for costs.

The mortgage note is security for payment of the $739.08 past due indebtedness and for future services in the criminal matter. The note states interest at 8% per annum. No disclosures beyond those on the face of the note were made to plaintiffs. The plaintiffs' 45 acre farm, in which defendant gained a security interest, was used as their homestead.

By letter dated August 27, 1979, plaintiffs' counsel advised defendant that plaintiffs had elected to rescind the transaction under 15 U.S.C. § 1635 and requested defendant to execute a waiver of the mortgage to be recorded with the Meeker County Recorder. By letter dated August 20, 1979, Neils declined to waive the mortgage and indicated that defendant considered its mortgage interest to remain, despite plaintiffs' effort to rescind.

*Issues*

The parties have stipulated the contested legal issues to be as follow:

1) Whether this transaction was a "consumer credit transaction" within the meaning of the Truth in Lending Act and regulations thereto as they existed on August 13, 1979.

2) If the transaction was a "consumer credit transaction," whether the plaintiffs are entitled to rescission of the mortgage transaction pursuant to Section 125 of the Act, 15 U.S.C. § 1635.

3) If they are entitled to rescission, whether plaintiffs are entitled to statutory damages, pursuant to 15 U.S.C. § 1640, and, if so, in what amounts.

4) Whether or not attorney's fees are recoverable when plaintiffs are represented by a non-profit legal service, and, if so, in what amount?

1. Defendant is now known as Hoolihan & Neils, P. A.

*Discussion*

1. *The nature of the transaction*

■ The Truth in Lending Act only applies herein if the transaction between plaintiffs and defendant can be properly considered a consumer credit transaction,[2] and not one for "business or commercial purposes." 15 U.S.C. § 1603. The applicability of the Act depends on the words of the statute interpreted in light of the purposes of the Act. *Dryden v. Lou Budke's Arrow Finance, Co.*, 630 F.2d 641, 646 (8th Cir. 1981). 15 U.S.C. § 1602(h) provides that

> the adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or *services* which are the subject matter of the transaction are *primarily for personal, family, household, or agricultural purposes.* [emphasis added].

The provisions of the Act, as remedial legislation, are to be construed broadly in favor of the consumer to implement the Congressional intent and purpose. *Murphy v. Ford Motor Credit Co.*, 629 F.2d 556, 559 (8th Cir. 1980).

■ The transaction herein is properly defined as a consumer credit transaction within the meaning of the statute. The legal services rendered had to do with the propriety of a sale of personal property from plaintiffs' farm, the purchase of pigs, and defense of felony theft of pigs. All the services were related either to plaintiffs' household, personal, or agricultural goods, agricultural livestock, or a personal interest in defending a felony charge.

■ Defendant argues on the basis of *Kenney v. Landis Financial Group, Inc.*, 376 F.Supp. 852 (N.D.Iowa 1974) that legal services must be considered commercial and thus not subject to the Act. In *Kenney* the court found that because the plaintiff had taken out a loan to finance a lawsuit under the Truth in Lending Act, and not to purchase a washer and dryer for his family's use as he contended, the transaction was not a consumer credit transaction. 376 F.Supp. at 853–854. At no point does the court state the broad holding suggested by plaintiff, and it would appear that the decision was predicated on the unique facts presented in the case. Moreover, the Federal Reserve Board has stated its opinion that legal fee agreements can constitute consumer credit transactions. *See* FRB Letter, Nov. 18, 1971, CCH Consumer Credit Guide ¶¶ 2330, 30,771. The Board's constructions of the statute and regulations are entitled to deference "because of the important interpretive powers granted to the agency in this very complex field." *Bright v. Ball Memorial Hospital Association, Inc.*, 616 F.2d 328, 333, n. 1 (7th Cir. 1980).

2. *Rescission of the mortgage transaction*

■ 15 U.S.C. § 1635(a) provides for an opportunity to rescind a consumer credit transaction in which a security interest is obtained in any real property which is used as the residence of the obligor. The obligor shall have three days to rescind the transaction following the consummation of the transaction or following delivery of the disclosures required under the Act, whichever is later. The right of rescission expires within three years of the consummation of the transaction, with or without disclosures. § 1635(f). The stipulated evidence shows that required disclosures, including disclosure of the right to rescind, were not made, and this suit was filed before three years had run from the consummation of the transaction. Accordingly, plaintiffs retained a continuing right to rescind. *See Rudisell v. Fifth Third Bank*, 622 F.2d 243, 247 (6th Cir. 1980).

■ Defendant argues that rescission of the mortgage transaction should be conditioned upon plaintiffs' payment of the amount due and owing to defendant. Re-

---

**2.** Defendant has stipulated facts sufficient to find it is a creditor under the terms of the Act.

*See* 15 U.S.C. § 1602(f).

scission under the Act is not conditioned upon the obligor's return of property. The obligor is required to return property received from the creditor only after the creditor takes action to reflect the termination of the security interest. 15 U.S.C. § 1635(b); *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974). Defendant has refused to take action to reflect termination of the security interest. Therefore, assuming, without deciding, that the Act's reference to return of property could apply to services, defendant has not taken action that brings it under this provision of the statute.

■ It has, however, been recognized that rescission under the Act is an equitable remedy; courts may condition rescission upon return to the creditor of property or money received or the reasonable value of the property. *See Rusidell v. Fifth Third Bank*, 622 F.2d at 254; *Palmer v. Wilson*, 502 F.2d at 862. Examination of the equities in this case shows that rescission should not be conditioned on payment for defendant's services. The purpose of rescission is to return the parties to the position they were in prior to the transaction. *See generally* Dobbs, *Remedies*, § 4.8 (1973). At the time of the mortgage transaction, plaintiffs owed defendant an unsecured debt of $739.09 plus the amount billed for services in the criminal matter. To require plaintiffs to pay that amount before allowing rescission would put defendant in a much better position than at the time of the transaction.[3]

### 3. *Statutory damages*

■ Any creditor who fails to comply with disclosure requirements of part B of the Act is liable to an individual obligor for twice the amount of any finance charge in connection with the action, not to exceed $1000. 15 U.S.C. § 1640(a)(2)(A). The rule in the Eighth Circuit is that each obligor in a consumer credit transaction may collect statutory damages up to $1000. *Andersen v. Farmers Bank of Clatonia*, 640 F.2d 1347, 1349 (8th Cir. 1981).

The evidence shows that a number of disclosures required by the Act were not made. For example, there was no disclosure of the right to rescind, as required by § 1635(a), which is contained in part B of the Act. Also, whether the transaction is characterized as open-ended or close-ended, the disclosure requirements for either type of account in relation to finance charges and related information were not made. *See* 15 U.S.C. §§ 1637, 1638; 15 C.F.R. §§ 226.7, 226.8. Defendant apparently does not dispute that such disclosures were not made.

The total finance charge alleged by plaintiffs, based on the 8% interest rate, the amount of the debt alleged, and the period of the note, is $82.33. Defendant has also calculated this to be the finance charge. Statutory damages are that amount doubled, or $164.66, to each plaintiff.

■ Defendant argues that it would be overly harsh for the court to grant both rescission and statutory damages, because any violation of the Act by defendant was not egregious, and the equities are in its favor. Statutory damages may be recovered even though plaintiffs have other remedies, including rescission. *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641, 647 (8th Cir. 1980). A request for relief is addressed to the court's sense of equity and may be denied in appropriate cases. *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974).

■ This is not an appropriate case to deny statutory damages. Defendant is a corporation made up of attorneys who should be familiar with the requirements of the Act. However, even when plaintiffs gave notice of their right to rescind and

---

3. It is not clear what portion of the services in the criminal matter, for which defendant billed $286 plus $19.97 for costs, were rendered after the mortgage transaction. The evidence, therefore, does not provide any basis for fashioning relief to the defendant in the form of requiring return of the value of services performed after the transaction, even if such relief were found to be appropriate. Moreover, plaintiffs' counsel has represented as an officer of the court that the fee claim for the period after the mortgage transaction would be *de minimis*.

their intention to do so, defendant refused to take appropriate steps to rescind. The principle that the Act be construed broadly in favor of the consumer militates against denying statutory damages in such a situation.

### 4. *Attorney's fees*

■ In any case where liability under § 1640 is successfully enforced, the creditor is liable for the costs of the action, together with reasonable attorney's fees. § 1640(a)(3). Defendant argues that attorney's fees are not appropriate because plaintiffs are represented by a non-profit legal service. This is not consistent with the law of the Eighth Circuit. "A legal aid organization merits an attorney's fee fully as much as does the private attorney." *Oldham v. Erlich*, 617 F.2d 163, 169 (8th Cir. 1980).

■ In determining reasonable attorney's fees under the Act, the court is guided by the factors set forth in *Brown v. Bathke*, 588 F.2d 634 (8th Cir. 1978) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and by the principle that the award should be adequate to encourage meritorious actions by "private attorneys general" to enforce the Act. *Murphy v. Ford Motor Credit Co.*, 629 F.2d 556, 561 (8th Cir. 1980). The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–719.

Generally, fees are awarded based on the number of hours claimed multiplied by the attorney's regular hourly rate. *Ladies Center Nebraska, Inc. v. Thone*, 645 F.2d 645, 647 (8th Cir. 1981).

Plaintiffs' counsel has presented affidavits containing itemized listings of time spent, the manner in which it was spent, the hourly rate for the attorneys or legal assistant working on the case, and costs. The list reflects: 1) 27.25 hours by Kurt Anderson, managing attorney for Western Legal Services, at $75 per hour, 2) 32.87 hours for Jane Nord, an attorney practicing with Western Minnesota Legal Services since 1979, at $50 per hour, 3) five hours for Bradley Junkermeir, legal assistant, at $7.00 per hour, and 4) $78.36 in costs. The total is $3,800.61.

■ The court has carefully considered the *Johnson* factors and the materials submitted by plaintiffs' counsel and has determined that an award of $3,800.61 is reasonable. Plaintiffs contend that the award should be enhanced above the normal rate due to the novelty of the issue. However, noting that the damages obtained were substantially less than the fees, the court finds that the normal rate is reasonable.

■ Defendant argues that because of the relatively small amount of the damage award, the plaintiffs' claim for attorney's fees should be reduced. While the "results obtained" factor must be considered, it should not be given such weight that it reduces the fee award below the "reasonable attorney's fee" authorized by the Act. *Brown v. Bathke*, 588 F.2d at 637. Recognizing the goal of encouraging "private attorneys general" such as plaintiffs to bring suits to enforce the Act, reduction of the award below the standard hours-times-rates formula would be inappropriate.

Finally, defendant alleges that the hourly rate charged by plaintiffs' counsel is above the standard hourly rate in the St. Cloud, Minnesota area. Defendants have presented no evidence to the court to show the normal fee for the area. Based on the education and experience of plaintiffs' counsel, the rate does not appear to be excessive.

## ORDER

Accordingly, based upon the foregoing, IT IS HEREBY ORDERED THAT

1. Plaintiffs are entitled to rescission of the mortgage transaction with defendant, as reflected in a note dated August 13, 1979.

2. Defendant is liable for statutory damages of $164.66 to each plaintiff.

3. Defendant is liable to plaintiffs for attorney's fees and costs in the amount of $3,800.61.

## ORDER FOR JUDGMENT

LET JUDGMENT BE ENTERED ACCORDINGLY.