**James A. BONFIGLIO, Plaintiff–Appellant,**

**v.**

**Charles NUGENT, Wagner, Nugent, Johnson, Roth, Romano, Eriksen & Kupfer, P.A., Defendants–Appellees.**

No. 92–4275
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 31, 1993.

James A. Bonfiglio, pro se.

Richard Kupfer, West Palm Beach, FL, for defendants-appellees.

Before HATCHETT, COX, and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This frivolous appeal follows from an equally frivolous lawsuit filed by Appellant James A. Bonfiglio, an attorney with eleven years' legal experience, who should have known better.

After entering a decree divorcing Bonfiglio and his wife, a state court ordered Bonfiglio to pay directly to the law firm that had represented his ex-wife in the divorce proceedings the sum of $6,385.00 in attorneys' fees and costs for her representation. After a number of months, Bonfiglio filed a motion asking the court to allow him to pay the law firm in installments on the ground that he could not afford to make the lump sum payment to which he was obligated under the order. The law firm did not object to Bonfiglio's request and prepared an order which it sent to him for submission to the court and which the court subsequently entered. Under that order, if Bonfiglio paid monthly installments of $250.00, no interest would be charged even though the firm would have to wait more than two years to receive all that Bonfiglio owed it. In short, the law firm accommodated Bonfiglio.

Following an unsuccessful appeal of the final divorce order by Bonfiglio, a state appellate court granted a motion for fees filed by his ex-wife's attorneys, with the amount to be assessed by the trial court. The law firm representing his ex-wife sent Bonfiglio an offer to settle the appellate attorneys' fee for the sum of $1500.00, payable in five monthly installments of $300.00, without interest.

After each of the two times the law firm agreed to allow Bonfiglio to pay in installments, he wrote letters to Charles Nugent, his ex-wife's lawyer, expressing his thanks for the "extension of credit," as he described it. Bonfiglio's feigned gratitude masked a malicious design to get even with Nugent and the law firm. Proving the adage that no good deed goes unpunished, twenty days after he last thanked Nugent for accommodating him, Bonfiglio filed a federal class action complaint against both Nugent and the law firm for violating the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and Regulation Z, 12 C.F.R. pt. 226, by not providing him with a financial disclosure statement when it agreed to allow him to pay in installments. Bonfiglio sought to represent a class of all persons who had entered into similar "consumer credit transactions" with the law firm. Bonfiglio's vindictive motive behind the lawsuit is evident in a letter he sent to Nugent after filing the action. In that letter, Bonfiglio said, "I received your various motions in regards to the dispute between myself and my former wife. Since I have you on two Regulation Z claims, I see no reason to further litigate with my former wife."

Bonfiglio's vindictiveness and bad faith are also evidenced by his clearly excessive discovery requests. He filed a production request which sought, among other things, the name of every client the firm had represented in the past five years, a copy of every fee contract signed by any of the more than a dozen attorneys in the firm

during that five-year period, and the financial records of every payment received by the firm during that same period. He also filed a set of sixty proposed interrogatories, many of which contained several subparts. Among other things, Bonfiglio sought to force the firm to disclose its revenue from fee agreements for each month of the preceding year and for the six preceding years. The statute of limitations for a Truth in Lending Act claim is one year. 15 U.S.C. § 1640(e).

■ The district court correctly granted summary judgment against Bonfiglio after determining that his lawsuit was utterly without merit. Congress passed the Truth in Lending Act to provide consumer credit protection, 15 U.S.C. § 1601(a); *see Tower v. Moss*, 625 F.2d 1161, 1165–66 (5th Cir. 1980), and the Act is expressly limited in scope to certain consumer credit transactions, 15 U.S.C. § 1602(f); Regulation Z, 12 C.F.R. § 226.1(c)(1). It is frivolous to contend that the Truth in Lending Act applies either to a debt created by a court order requiring one party to pay another's fees and costs, or to a related payment plan ordered by the court or worked out by the parties. "Credit," as that term is used in the Truth in Lending Act, manifestly does not include court judgments or orders. 12 C.F.R. pt. 226, supp. I, subpt. A, § 226.-2(a)(14) (Official Staff Interpretation); *see Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (staff opinions controlling unless "demonstrably irrational"). Bonfiglio's court-ordered obligation to pay the two sums to his ex-wife's law firm, and the resulting installment plans, were clearly not "consumer credit transactions" within the meaning of the Truth in Lending Act.

■ Bonfiglio's reliance on a distinguishable, non-binding district court decision, *Dougherty v. Hoolihan, Neils, and Boland, Ltd.*, 531 F.Supp. 717 (D.Minn.1982), for his position demonstrates how devoid of merit that position is. In *Dougherty*, the plaintiffs had executed a promissory note, secured by a real property mortgage, for payment of legal fees for services rendered to the plaintiffs by the defendant law firm.

The district court found that the defendant's failure to comply with the disclosure requirements of the Truth in Lending Act and Regulation Z entitled the plaintiffs to recision and statutory damages. *Id.* at 722. The plaintiffs' obligations, represented by the note, arose from the services provided to the plaintiffs in a voluntary contractual relationship, not from any court-ordered payment to an adverse party or adverse party's attorney. In contrast, Bonfiglio was obligated by court orders to pay certain legal fees for services rendered not to him but to his ex-wife, who was very much an adverse party. Because Bonfiglio's obligation to his ex-wife's law firm arose by operation of court judgments, and not from consumer transactions under the Truth in Lending Act, Bonfiglio's attempt to compare his apple to *Dougherty*'s orange is frivolous. The district court's grant of summary judgment against Bonfiglio is due to be affirmed.

■ Attorney Nugent and his law firm have moved for appellate attorneys' fees. Bonfiglio has filed an opposition to that motion and has also filed his own motion for attorneys' fees. Neither side has requested any further hearing or proceeding on the attorneys' fees issue. We proceed to decide on the record before us that issue and the issue of whether to award double costs. Although the amount of appellate attorneys' fees and costs is limited by reference to the amount of resources expended by the prevailing party at the appellate level, in deciding whether to award them it is appropriate to view this appeal as only the latest in a continuous series of events that began even before the lawsuit which gave rise to this appeal was filed.

Not only was Bonfiglio's lawsuit utterly devoid of merit, but what he asserted as a violation of his rights under the Truth in Lending Act was manufactured by him through artifice and deceit. It was Bonfiglio who first suggested an installment plan and who represented to the state court and to his ex-wife's law firm that his financial condition prevented a lump sum payment. He conceived, launched, and pursued a premeditated scheme to set up the law firm

for his spurious Truth in Lending Act claim. Even his thank you letters to Nugent, which referred to his gratitude for the "extension of credit," were part of the scheme. Bonfiglio used the state court system in his vendetta against his ex-wife's law firm, and then he also attempted to use the federal court system.

When it granted summary judgment against Bonfiglio, and after finding his lawsuit was wholly without merit, the district court warned Bonfiglio:

Plaintiff is skirting dangerously close to incurring sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Plaintiff is an attorney and thus is familiar or should be familiar with the requirements of Rule 11. Cloaking the above-styled cause as a class action pursuant to the Federal Truth in Lending Act is nothing short of an abuse of the judicial process designed to harass Defendants into foregoing payment of the Judgment against Plaintiff. This Court will not provide the vehicle for Plaintiff's desperate measures and overt manipulation of an already overburdened judiciary.

In case Bonfiglio had otherwise missed the point, the district court expressly retained jurisdiction of the case "as to the matter of attorneys' fees and costs" arising at the district court level.

Bonfiglio refused to heed the district court's clear warning, and instead stubbornly filed this appeal in which he repeats to this Court the utterly frivolous contentions he made in the district court. As he has from the beginning of this litigation, Bonfiglio is proceeding in bad faith in a malicious attempt to misuse the judicial system to wage a vendetta against the law firm that represented his ex-wife in the divorce proceedings. We cannot allow such a waste of limited judicial resources to continue unchecked. "Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Green v. Carlson,* 649 F.2d 285, 287 (5th Cir. Unit A June 1981). The harm inflicted by vexa-

tious litigation extends beyond systemic considerations. In bad faith lawsuits there are innocent parties who are victimized by abuses of the judicial system. Those innocent parties are forced to spend valuable time and other resources in defense of actions which clearly should never have been brought. Vexatious litigation by its very nature is designed to harass and to inflict emotional suffering upon those who are the targets, and it often achieves that goal.

We consider it of no moment that in this case the innocent victims of the harassing litigation are attorneys. The adage that one who lives by the sword dies by the sword is inapt, because attorneys do not gain their livelihood by filing meritless lawsuits motivated by a vindictive desire to harass. There is certainly nothing to indicate that the attorneys who are the focus of Bonfiglio's malice in this lawsuit did anything to earn that malice other than carry out their duty to advocate the interests of a client in a lawsuit. Lawyers, too, suffer as defendants in vexatious litigation. The Honorable Learned Hand, who spent a half century on the federal bench, once lamented: "I must say that, as a litigant, I should dread a lawsuit beyond almost anything else short of sickness and of death." L. Hand, "The Deficiencies of Trials to Reach the Heart of the Matter," 3 Association of the Bar of the City of New York, *Lectures on Legal Topics* 89, 105 (1926). While some might wish such a fate on lawyers, we are certain that even members of the much-maligned legal profession merit protection from vexatious litigation. Thus, we find that Bonfiglio has earned the sanctions we impose pursuant to 28 U.S.C. §§ 1912 and 1927, and Fed.R.App.P. 38. *See also, Geaneas v. Willets,* 911 F.2d 579, 582 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991); *Hernandez v. Hertz Corp.,* 867 F.2d 1330 (11th Cir.1989).

As sanctions we order Bonfiglio to pay double the costs of this appeal, and we also order him to pay reasonable attorneys' fees to Appellees. Rather than attempt to calculate the appellate attorneys' fees ourselves, we exercise our option to allow the district court to do so. *See King v. United*

*States,* 789 F.2d 883, 884 (11th Cir.1986); *Collins v. Amoco Production Co.,* 706 F.2d 1114, 1115 (11th Cir.1983). We remand this case to the district court with instructions for it to calculate and assess the attorneys' fees and costs that Bonfiglio is to pay in connection with this appeal and to order that amount paid. Nothing we say is meant to interfere with the district court's authority to enter sanctions under Rule 11 for Bonfiglio's action in filing and pursuing the lawsuit at the district court level, if it decides that such sanctions are appropriate.

We AFFIRM the district court's order granting summary judgment, TAX DOUBLE COSTS against Appellant, DENY Appellant's motion for attorneys' fees, GRANT Appellees' motion for attorneys' fees, and REMAND the case to the district court for assessment of those fees and costs and entry of an appropriate order.