[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13000
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cv-00234-ELR

RODERICK A. WRIGHT,

Plaintiff-Appellant,

versus

BRANCH BANKING AND TRUST COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 28, 2021)

Before WILSON, MARTIN, and BRANCH, Circuit Judges.

PER CURIAM:

More than eight years after Truist Bank foreclosed on Roderick Wright's and his mother's homes,[1] Wright sued Truist, alleging misconduct related to the underlying loans. On Truist's motion, the U.S. District Court for the Northern District of Georgia dismissed Wright's complaint for failure to state a claim.

Wright argues that the district court erred in dismissing his complaint because: (1) he pleaded an actionable claim for breach of duty by a notary public, (2) his Georgia RICO Act claim was not time-barred, and (3) his substantive claims were adequate to support his claims for punitive damages and attorney's fees. Because the district court properly dismissed these claims, we affirm.

Truist requests that we deem Wright's appeal to be frivolous and award sanctions. Wright requests that we strike portions of Truist's motion for sanctions for *ad hominem* language and for us to award sanctions in his favor. Because we conclude that Wright's appeal is frivolous, we grant Truist's motion for sanctions and remand to the district court for an assessment of attorney's fees and costs. As to Wright's motion to strike and for sanctions, we conclude that the arguments in Truist's motion for sanctions were not improper and deny Wright's motion.

## I.    Background

A.    Facts

---

[1] Truist was then known as the Branch Banking and Trust Company.

Wright owned a real estate development business and began banking with Truist around 2000. In March 2010, Truist approached Wright with a restructuring plan for some of his commercial loans. The plan involved securing and cross-collateralizing the loans with Wright's and his mother's homes. Wright alleges that Truist told him that the restructuring plan would be in his best interests. In reliance on that representation, he subsequently executed the plan.

According to Wright, there were no witnesses or notaries present when he signed the plan documents. Afterwards, he alleges, Truist affixed false notary public attestations and witness signatures to the documents. Truist then allegedly refused to accept full payoffs of the loans. In November 2010, several months after the parties executed the restructuring plan, Truist foreclosed on Wright's and his mother's homes.

B.    Procedural History

On December 16, 2019, Wright filed a complaint against Truist in the Superior Court of Gwinnett County, Georgia. Wright alleged that Truist was liable for breach of duty by a notary public, a violation of the Georgia RICO Act, punitive damages, and attorney's fees.[2] Truist subsequently removed the case to the U.S. District Court for the Northern District of Georgia.

---

[2] Wright also alleged counts of fraud, breach of fiduciary duties, economic duress, and to "set aside improper documents." Because the district court dismissed these claims and Wright

3

Truist then moved to dismiss Wright's complaint for failure to state a claim upon which relief can be granted.  In its motion, Truist argued that: (1) Georgia law does not recognize a private cause of action based on violations of the notary public statutes, (2) Wright's Georgia RICO Act claim was barred by the applicable five-year statute of limitations, and (3) Wright was not entitled to punitive damages or attorney's fees because he failed to establish his underlying claims.

Wright responded and argued that Truist's "procurement and participation in the intentional violations of" the notary public statutes was actionable under Georgia law, his Georgia RICO Act claim was timely because it "ar[ose] out of the conduct associated with the execution of [sealed documents]" and was subject to a twenty-year statute of limitations, and his claims for punitive damages and attorney's fees survived because his underlying claims were adequately pleaded.

The district court granted Truist's motion to dismiss.  It found that "[i]n Georgia, there is no private cause of action for a claim arising under the notary public statutes," and that "employers are neither subject directly to nor held vicariously liable for violations of OCGA § 45-17-11 committed by a notary public employed by them."  It rejected Wright's argument that a twenty-year statute of limitations applied to his Georgia RICO Act claim because the Georgia RICO Act

---

does not challenge that decision on appeal, we will limit our discussion to Wright's remaining claims.

contains a five-year statute of limitations. Lastly, it dismissed Wright's claims for punitive damages and attorney's fees because it had dismissed all of Wright's underlying claims. Wright timely appealed.

On appeal, Wright argues that the district court improperly dismissed his claim for breach of duty by a notary public because it "misinterpreted case law detailing liability of an employer that procured an employee-notary's violation of [the notary public statute]." He also argues that it erred in dismissing his Georgia RICO Act claim because it "failed to recognize that the racketeering activity alleged . . . related to the improper attestations of the notaries subjecting the RICO claim to twenty-year statute of limitations under O.C.G.A. § 9-3-23 because the false swearing and false statements were upon sealed instruments." Finally, he argues that because his claim for breach of duty by a notary public and his Georgia RICO Act claim "should be reinstated . . . [his claims] for punitive damages and attorneys' fees should likewise be reinstated."

After Wright filed his opening brief, Truist filed a motion for sanctions under Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1927.[3] In its

---

[3] Rule 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

28 U.S.C. § 1927 states: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

motion, Truist argued that Wright's appeal was frivolous because it was clearly foreclosed by governing law.  Truist also made references to the facts that: (1) Wright's counsel, Eric J. Nathan, had been sanctioned by this Court in *Coastal Bank v. Martin*, 717 F. App'x 860, 865–66 (11th Cir. 2017), for failing to disclose controlling authority, and (2) Truist had obtained a judgment against Nathan in a separate matter for $2,737,372.61.  Based on these facts, Truist suggested that Wright and Nathan were waging a "vendetta" against it.

In response, Wright filed a motion to strike Truist's motion for containing *ad hominem* language and requested sanctions.  He argued that Truist "inserted no fewer than eight *ad hominem* attacks directly, and unnecessarily, attacking the personal credibility and character of Counsel for Wright and Wright himself," in violation of Eleventh Circuit Rule 25-6.[4]  According to Wright, it was inappropriate for Truist to mention that Nathan had been sanctioned by this Court or that it had obtained a judgment against Nathan.  He also requested that we impose sanctions against Truist and its counsel under our inherent authority for their purported "continued and pervasive *ad hominem* attacks."

---

[4] Eleventh Circuit Rule 25-6 states: "When any paper filed with the court, including motions and briefs, contains . . . *ad hominem* or defamatory language . . . the court . . . may without prior notice take appropriate action . . . includ[ing] ordering that: the document be sealed; specified language or information be stricken from the documents; the document be struck from the record; the clerk be directed to remove the document from electronic public access; the party who filed the document either explain why including the specified language or disclosing the specified information in the document is relevant, necessary, and appropriate or file a redacted or replacement document."

II.    Analysis

We review the district court's grant of Truist's motion to dismiss *de novo*, accepting the allegations in Wright's complaint as true and construing them in the light most favorable to him. *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020).

A.    Breach of Duty by a Notary Public

Wright argues that the district court erroneously dismissed his claim for breach of duty by a notary public. The district court dismissed the claim because it found that, "[i]n Georgia, there is no private cause of action for a claim arising under the notary public statutes."

Under O.C.G.A. § 45-17-8(d), "[a] notary public shall not execute a notarial certificate containing a statement known by the notary to be false nor perform any action with an intent to deceive or defraud." In *Anthony v. American General Financial Services Inc.*, 697 S.E.2d 166, 171–75 (Ga. 2010) ("*Anthony I*"), the Supreme Court of Georgia held that the notary public statutes do not create a private cause of action. We subsequently adopted that ruling and affirmed a district court's dismissal of "a private civil claim under the notary fee statute."[5]

---

[5] In his complaint, Wright bases his claim for breach of duty by a notary public on O.C.G.A. § 45-17-8(d) in conjunction with O.C.G.A. § 51-1-6. Section 51-1-6 states: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party

*Anthony v. Am. Gen. Fin. Servs., Inc.*, 626 F.3d 1318, 1321 (11th Cir. 2010)

("*Anthony II*").

Wright ignores these holdings and points to language in *Anthony I* where the

Supreme Court of Georgia stated: "[A]lthough a corporation cannot be directly or

vicariously liable for a violation of OCGA § 45-17-11, it still may be liable if it

procures or otherwise qualifies as a party to or participating in such a violation by a

notary." 697 S.E.2d at 171; *see id*. at 170 ("But under well-established principles,

the corporation (or other person) may still be liable if it *participates in or procures*

the notary's violation. In terms of criminal liability, this is simply the concept of

being a party to a crime."). He argues that this language permits his claim against

Truist to go forward.

But Wright misinterprets this language. Although the Supreme Court of

Georgia stated that a "corporation . . . may still be liable if it participates in or

procures the notary's violation," *Anthony I*, 697 S.E.2d at 170 (emphasis omitted),

it was not creating a private cause of action for violations of the notary public

_____

may recover for the breach of such legal duty if he suffers damage thereby." Wright does not
make any argument related to O.C.G.A. § 51-1-6 on appeal.

Regardless, in *Branch Banking & Trust Co. v. Morrisroe*, 746 S.E.2d 859, 861 (Ga. Ct.
App. 2013), the Court of Appeals of Georgia held that O.C.G.A. § 45-17-8(d) in conjunction
with O.C.G.A. § 51-1-6 does not create a viable cause of action because "[a] duty cannot rest
solely on OCGA § 51-1-6 . . . because it merely sets forth general principles of tort law." Thus,
O.C.G.A. § 51-1-6 does not affect our analysis of whether there is a private cause of action for
breach of duty by a notary public under O.C.G.A. § 45-17-8(d).

statutes. Instead, it was merely noting that a plaintiff "may be able to pursue civil liability against [a party who violates the statute] under other applicable tort or contract laws of this State." *Id.* at 175. It is for those claims—for violations of "other applicable tort or contract laws"—that a corporation may be held liable as a joint wrongdoer under the notary public statutes. *See id*. at 170 ("[I]n all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." (quoting O.C.G.A. § 51-12-30)). Because the Supreme Court of Georgia and this Court have both clearly held that the notary public statutes do not create a private cause of action, the district court properly dismissed Wright's claim.[6]

B.    Georgia RICO Act

Next, Wright argues that the district court applied the wrong statute of limitations to his Georgia RICO Act claim. Under the Georgia RICO Act, "[n]otwithstanding any other provision of law, a criminal or civil action or proceeding under this chapter may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action

---

[6] Even if O.C.G.A. § 45-17-8(d) created a private cause of action for breach of duty by a notary public, Wright's claim would still fail because he did not meet the four-year statutes of limitations for injuries to realty or personalty under O.C.G.A. §§ 9-3-30 and 9-3-31. *See, e.g.*, *Godwin v. Mitzpah Farms, LLLP*, 766 S.E.2d 497, 507 (Ga. Ct. App. 2014).

accrues." O.C.G.A. § 16-14-8 (2011)[7]; *see Glock, Inc. v. Harper*, 796 S.E.2d 304, 306 (Ga. Ct. App. 2017). The district court applied this five-year statute of limitations and found that Wright's claim was "over three (3) years late" because "the most recent action taken by [Truist] relevant to this claim was on May 3, 2011, when it foreclosed on the last of the collateral properties."[8]

Wright argues that his Georgia RICO Act claim is subject to the twenty-year statute of limitations of O.C.G.A. § 9-3-23 instead, because the claim arises out of conduct related to the execution of sealed instruments.[9] This argument fails for two reasons. First, the Georgia RICO Act states that the five-year statute of limitations applies "[n]otwithstanding any other provision of law."[10] O.C.G.A. § 16-14-8 (2011). In his reply brief, Wright argues that "[t]he word 'notwithstanding' does not mean that no other rule could apply" and that nothing in the statute "prevent[s] a party from availing itself of a more liberal rule of law such

---

[7] O.C.G.A. § 16-14-8 was amended in 2015. Because the amendment was not retroactive, *see Glock, Inc. v. Harper*, 796 S.E.2d 304, 306 (Ga. Ct. App. 2017), we will apply the version of the statute that was in effect at the relevant time.

[8] Wright does not dispute that the statute of limitations on his Georgia RICO Act claim began to run on May 3, 2011.

[9] *See* O.C.G.A. § 9-3-23 ("Actions upon bonds or other instruments under seal shall be brought within 20 years after the right of action has accrued.").

[10] Even though the district court dismissed Wright's Georgia RICO Act claim based on O.C.G.A. § 16-4-8—the applicable statute of limitations—Wright did not discuss the statute at all in his opening brief.

as O.C.G.A. § 9-3-23."[11]  But "notwithstanding" means: "Despite; in spite of." *Notwithstanding*, Black's Law Dictionary (11th ed. 2019).  Thus, we conclude that O.C.G.A. § 16-14-8 (2011) supplies the exclusive statute of limitations for Wright's Georgia RICO Act claim.  Because Wright did not file his claim within five years of May 3, 2011, the district court properly dismissed it.

Second, Wright's expansive interpretation of the twenty-year statute of limitations for sealed instruments has been rejected by the Supreme Court of Georgia.  In *Harris v. Black*, the Supreme Court of Georgia held that "if suit is brought upon an official bond under seal, for a breach thereof," then the twenty-year statute of limitations applies.  85 S.E. 742, 747 (Ga. 1915).  But "if the action is brought against the officer individually, and not upon his bond, different periods of limitations may apply according to whether the action sounds in tort or in contract; and if the former, the limitation is dependent upon the particular character of the tort."  *Id*.  Because Wright's Georgia RICO Act claim is not a claim "upon an official bond," it is not subject to the twenty-year statute of limitations of O.C.G.A. § 9-3-23 and was properly dismissed.

C.    Punitive Damages and Attorney's Fees

---

[11] Ordinarily, we do not consider an argument raised for the first time on reply.  *Mamone v. United States*, 559 F.3d 1209, 1210 n.1 (11th Cir. 2009).  But we will address Wright's argument here to demonstrate that it is frivolous.

11

Wright acknowledges that his claims for punitive damages and attorney's fees must fail if his substantive claims are dismissed. Because we affirm the district court's dismissal of his substantive claims, we also affirm its dismissal of his claims for punitive damages and attorney's fees. *See generally Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304–05 (11th Cir. 2009).

III.    Sanctions

A.    Wright's Motion for Sanctions

Wright argues that we should strike certain language in Truist's motion for sanctions for being *ad hominem* and requests sanctions for Truist's decision to include that language in its motion. In particular, he contends that it was inappropriate for Truist to mention that Nathan had been sanctioned by this Court for a frivolous appeal or that Truist had obtained a multi-million-dollar judgment against Nathan.

Truist's motion for sanctions was based, in part, on 28 U.S.C. § 1927. To prevail on its claim for sanctions under § 1927, Truist was required to "show *subjective* bad-faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). "This standard can be met either (1) with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct so egregious that it could only be committed in bad faith." *Id*. (quotation omitted); *see Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) ("A determination of bad faith is warranted

12

where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." (quotation omitted)).

The facts that Nathan had been sanctioned by this Court for a frivolous appeal and that Truist had obtained a multi-million-dollar judgment against him are clearly relevant to whether Nathan "knowingly or recklessly pursue[d] a frivolous claim." *Amlong*, 500 F.3d at 1242.  And because these facts were relevant to Truist's claims, we decline to strike or seal Truist's motion or the related filings. *See* 11th Cir. R. 25-6 (suggesting that a paper filed with the court may contain arguably *ad hominem* language where it is "relevant, necessary, and appropriate").

Because we conclude that it was not inappropriate for Truist to mention these facts, we deny Wright's request for us to award sanctions.  To award sanctions under our inherent powers, we "must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'"  *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (quotation omitted).  In *Thomas*, we awarded sanctions where the lawyer made: "(1) insulting remarks about opposing counsel's physical traits and demeanor, (2) comments that called into question opposing counsel's fitness as a member of the bar, (3) thinly veiled threats aimed at opposing counsel, (4) a racial slur, and (5) unsubstantiated claims that opposing counsel was a racist."  *Id*. at 1323.  Unlike the lawyer in *Thomas*, Truist did not

13

engage in conduct "tantamount to bad faith."  As already discussed, Truist's mention of the facts that Nathan had been sanctioned by this Court and that Truist had obtained a multi-million-dollar judgment against him was not inappropriate because it was relevant to Truist's claims under § 1927.

B.      Truist's Motion for Sanctions

Truist argues that Wright's appeal is frivolous and requests that we award attorney's fees and double costs under Federal Rule of Appellate Procedure 38. Wright argues that his appeal is not frivolous—specifically, that "[t]he two enumerations of error in this case are essentially issues of first impression in this Court . . . and have not been fully addressed or settled by any Georgia Appellate Court."

We may impose sanctions under Rule 38 against a party who "raises clearly frivolous claims in the face of established law and clear facts."  *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (quotation omitted); *see Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1359 (11th Cir. 2018).  "[A] claim is clearly frivolous if it is utterly devoid of merit."  *Parker*, 835 F.3d at 1371 (quotation omitted).  When determining whether to award sanctions, we may review the "continuous series of events . . . which gave rise to this appeal." *Bonfiglio v. Nugent*, 986 F.2d 1391, 1393 (11th Cir. 1993).

Wright filed a complaint containing at least four counts that were barred by the applicable statutes of limitations, a conclusion that he does not challenge on appeal. Then, on appeal, he raised two arguments that were directly foreclosed by precedent from the Eleventh Circuit and the Supreme Court of Georgia, and by the plain language of O.C.G.A. § 16-14-8 (2011). *See Bonfiglio*, 986 F.2d at 1394 (awarding sanctions where the appellant "stubbornly filed [an] appeal in which he repeate[d] to this Court the utterly frivolous contentions he made in the district court"). Finally, when Truist filed a motion for sanctions based on this conduct, Wright filed a meritless motion to strike and for sanctions.

Wright's arguments on appeal were devoid of merit because *Anthony I* and *Anthony II* clearly establish that the notary public statutes do not create a private cause of action and because O.C.G.A. § 16-14-8 (2011) clearly establishes a five-year statute of limitations for Georgia RICO Act claims. More egregiously, Wright did not even mention O.C.G.A. § 16-14-8 (2011)—the applicable statute of limitations, which the district court relied on to dismiss his Georgia RICO Act claim—in his opening brief. Instead, he waited until his reply brief to argue that O.C.G.A. § 16-14-8 (2011) does not apply here because "[t]he word 'notwithstanding' does not mean that no other rule could apply." This argument is utterly devoid of merit and Wright has provided no non-frivolous argument why

15

the Georgia RICO Act's five-year statute of limitations does not bar his Georgia RICO Act claim.

Thus, as a sanction, we order Wright and his counsel to pay double the costs of this appeal, as well as reasonable attorney's fees to Truist. *See Bonfiglio*, 986 F.2d at 1394; *see Taiyo Corp. v. Sheraton Savannah Corp.*, 49 F.3d 1514, 1515 (11th Cir. 1995) (imposing joint and several liability for Rule 38 sanctions). "We remand this case to the district court with instructions for it to calculate and assess the attorneys' fees and costs that [Wright and his counsel are] to pay in connection with this appeal and to order that amount paid." *Bonfiglio*, 986 F.2d at 1395.

## IV.    Conclusion

For these reasons, we affirm the district court's decision and remand the case to the district court to assess attorney's fees and costs.

**AFFIRMED and REMANDED.**